HAWTHORNE, Justice.
Plaintiff, The Whittington Company, Inc., instituted this suit seeking to recover the sum of $4350.00 which it alleges is due it by the defendant, Louisiana Paper Company, Ltd., as rent under the terms of three successive leases by which plaintiff leased to the defendant a brick warehouse in Alexandria, The defendant pleaded paymént of all rent due by it under the leases. After trial on the merits there was judgment for the defendant dismissing plaintiff’s suit, and plaintiff has appealed.
In 1929 the plaintiff corporation leased the warehouse to the defendant by written lease for a period of five years. The lease was renewed from time to time, on October 14, 1937, for a period of three years, from January 1, 1938, through December, 1940, at a rental of $75.00 per month; on October 21, 1940, for a period of three years, from January 1, 1941, through December, 1943, at a rental of $100.00 per month; on August 17, 1943, for a period of two years, from January 1, 1944, through December, 1945, at a rental of $150.00 per month. For *360 brevity we shall hereafter designate these leases, respectively, as the 1938, the 1941, and the 1944 lease. The 1938 lease contained a provision which had not been in any prior lease requiring the lessee on the first day of each month to deposit the monthly rental in the Guaranty Bank & Trust Company in Alexandria for the account of the lessor, and like provisions were incorporated in the 1941 and in the 1944 leases.
Plaintiff in its petition contends that the $75.00 monthly rental was not paid for several months under the 1938 lease, that none of the $100.00 monthly rental was paid under the 1941 lease, and that the first monthly rental of $150.00 was not paid under the 1944 lease; that the total sum due is $4350.00 covering rent for a period of 45 months. The plaintiff now concedes that it has received $650.00 of the rent claimed, that the claim for all rent beyond the three-year period prior to the filing of this suit, amounting to $1233.34, has prescribed, and that all that is now in dispute on this appeal is $2466.66.
The defendant admits that it did not deposit the rental checks to the account of the plaintiff according to the provisions of the leases, but paid all of the rentals by deliver}'' of monthly checks to Mr. Cannon Flournoy, a public accountant who resided in Alexandria. It is established that upon receipt of these checks Mr. Flournoy endorsed them with the endorsement of the Whittington Company and signed his name as agent; that he deposited a part of the proceeds of some of these checks to the account of the plaintiff in the Guaranty Bank & Trust Company, but that he cashed most of the checks and, according to the plaintiff, converted the proceeds to his own use.
The defendant contends that Flournoy was plaintiff’s agent, and that the plaintiff acquiesced in the method of payment by which the defendant’s checks were delivered to Flournoy. It is plaintiff’s contention that Flournoy had no authority to accept rental payments or to endorse checks, and that payment to Flournoy was not payment to it.
Mr. E. F. Whittington, president of the plaintiff corporation, testified that this provision for the deposit of rental checks in the bank was inserted in these leases in order to avoid the expense of payment of a 10 per cent commission to an agent for collecting the rent on this property. Admittedly this provision was never complied with by the lessee, but the checks were delivered to Flournoy, as hereinabove set forth. The officers of the plaintiff corporation, however, at least had knowledge that this provision of the leases was not always complied with, but never complained of the defendant’s method of payment. In August of 1942 the defendant’s Alexandria manager, Mr. Tom Brooks, called Miss Emily Whittington, secretary-treasurer of the plaintiff, to consult with her about the disposition of several rent checks which has been accumulating while Mr. Flournoy was *362 in the hospital, and she instructed him to deposit them to the Whittington estate. On one occasion both Mr. Whittington, the president, and Mr. Flournoy were in the office of the defendant corporation in Alexandria at the time the rent check was delivered by Mr. Tom Brooks. Mr. Brooks testified that he delivered the check on this occasion to Mr. Flournoy. On the other hand, Mr. Whittington said that it was delivered to him. In either event, Mr. Whittington had knowledge that all rental checks were not being deposited in the bank in accordance with the leases.
The plaintiff, Whittington Company, Inc., a corporation domiciled in Rapides Parish, Louisiana, was organized in 1924 to incorporate the interest of the Whittington heirs after the death of their mother. Most of the assets of this corporation consisted of real estate in Alexandria. Since 1932 the business of the corporation has been conducted by E. F. Whittington, of Clarksdale, Mississippi, as president and general manager of the corporation, with complete and full authority of the Whittington heirs to conduct all business affairs of the corporation. Since 1937 the Alexandria office of the corporation has been in the home of Miss Emily Whittington, one of the Whittington heirs and a sister of E. F. Whittington. The books and all other papers of the corporation were kept in this office. Cannon Flournoy was a close personal friend of E. F. Whittington and lived at the home of Miss Emily Whittington. Flournoy kept the books of the corporation and made its income tax returns. These books and income tax returns show that the rent of the defendant was paid. E. F. Whittington visited in Alexandria for several days at a time several times a year, but he never examined the books and accounts of the corporation. Flournoy received the bank statements, but Whittington never checked them. He put absolute confidence in Flournoy, and his correspondence with Flournoy shows that he allowed him great latitude in looking after the corporation’s business. On his visits to Alexandria Flournoy went around with him on his business trips, and he referred to Flournoy as the one who would attend to matters that came up in his absence. When repairs to the leased building were to be made, the defendant called upon Flournoy, and he attended to them. He participated in the negotiations for leases and for the transfer of property. He went about Alexandria looking after any work that was in progress for the plaintiff. The evidence is convincing that he performed so many services for the corporation that he was generally considered as its agent. To offset the effect of this evidence, plaintiff introduced evidence to show that other agents, not Flournoy, were appointed to collect rent oh its other rental property, and that there was no justification for defendant’s belief that Flournoy had authority to collect rentals.
Early in 1944 Cannon Flournoy became ill and was confined to a hospital. He never *364 recovered from this illness and died prior to the institution of this suit, and his version of this affair was never perpetuated. In his absence from the office during this illness, Mr. Whittington had occasion to examine the books and for the first time learned of Flournoy’s misappropriations of the proceeds of the rental checks. Upon this discovery he made an attempt to get one of Flournoy’s relatives to make good the loss, and some attempt was made to blame the bank. Finally this action was brought against the defendant.
For almost four years Flournoy endorsed the monthly rent checks as agent of the plaintiff corporation, depositing only a small portion of the proceeds of some of these checks in the bank and converting the balance of the proceeds to his own use. During this period of time the lease was renewed, not once, but twice. Flournoy’s misappropriations could have been easily detected by plaintiff had its officers taken the care at any time to check the bank statements or the books of the corporation. There is no question that defendant in its dealings with Flournoy was in good faith, and that the great latitude allowed Flournoy in the plaintiff’s business and the want of ordinary care by the plaintiff contributed to, and justified, defendant’s belief that Flournoy was acting as agent under authority from plaintiff.
All the facts and circumstances of this case convince us that, although the defendant was perhaps negligent or remiss in not making the rental payments in the manner prescribed in the leases, it was the carelessness, negligence, and laxity of the plaintiff which enabled Flournoy to continue his misappropriations for so long a period without detection, and the equitable doctrine that, as-between two innocent persons, the one who-most contributed to the loss should bear the consequences is applicable to this case. Young v. Gretna Trust & Savings Bank, 184 La. 872, 168 So. 85.
To us there can be no question that the carelessness, negligence, and laxity of the plaintiff contributed in so great a degree to-its loss that it now has no. right to be reimbursed by the defendant for its loss. Pearlstone-Ash Grocery Co. v. Rembert Nat. Bank of Longview, Tex.Civ.App., 135 S.W.2d 559; Safeway Stores, Inc., v. King Lumber Co., 45 Cal.App.2d 17, 113 P.2d 483.
For the reasons assigned, the judgment appealed from is affirmed, appellant to pay-all costs.