96 So.2d 578

**EVANGELINE IRON WORKS, Limited,**

**v.**

**Lucius L. LYONS et al.**

No. 43089.

June 10, 1957.

Kaufman, Anderson, Leithead & Scott, Lake Charles, for plaintiff-appellant.

Griffin T. Hawkins, Selby & Lawes, Lake Charles, for defendants-appellees.

FOURNET, Chief Justice.

The plaintiff, Evangeline Iron Works, Ltd., alleging the defendant E. J. Smith[1] had assisted and encouraged its former employee and officer Lucius L. Lyons to illegally obtain funds upon checks payable to plaintiff's order, with full knowledge the funds thus fraudulently secured were not being used for plaintiff's business or benefit, but, instead, for the gambling and drinking of Lyons in Smith's place of business, instituted this suit against Lyons and Smith seeking an in solido judgment against them in the sum of $40,000, with recognition and enforcement of a mortgage given it by Lyons as partial reimbursement for the funds thus obtained.[2]

The defendants, after their exceptions of no cause and no right of action were overruled and Smith's plea of prescription of one year was referred to the merits, answered, generally denying the allegations of the petition. Smith further answered, averring that although he had cashed the checks, he had no knowledge of wrong doing on the part of Lyons and had not profited in any way from the transactions.

Following trial on the merits there was judgment in favor of the plaintiff and against Lyons in the sum of $18,726.05, with recognition of the lien and mortgage. As to Smith, the suit was dismissed, for the reasons as stated by the trial judge that (1) plaintiff conceded it failed to make out a case against him under Article 2324 of the Revised Civil Code, and (2) failed to prove with the certainty required by law its right to recover under a subsequently advanced theory that, having received money due

---

1. Smith died on May 13, 1954, shortly after trial on the merits, and his widow, Mrs. Bernice Smith, was substituted as party defendant in his stead.

2. Shortly after the defalcation was discovered, Lyons gave plaintiff a check for $1,700 and a $4,000 mortgage on property belonging to him as a partial restitution of the funds secured, stating this would cover all amounts embezzled. Subsequent check disclosed funds in excess of $20,000 had been thus secured over a 6-year period.

plaintiff either knowingly or by error, Smith was required to restore it under Article 2301. The plaintiff prosecutes this appeal from the judgment in favor of Smith.

The record reveals the plaintiff, a small corporation composed almost entirely of its own employees, operates in the city of Lake Charles, Louisiana, a machine and welding shop for the repair of oil field and general contractor equipment. The defendant Lyons, a trusted employee for many years, originally joined the company in a bookkeeping and clerical capacity, being made vice-president in 1943 and secretary-treasurer in October of 1950. After his election to the vice-presidency, Lyons, from April of 1944 through October of 1950 systematically cashed customer checks payable to the company, retaining the funds thus secured and altering the books to conceal the resulting shortage. These defalcations were revealed when D. J. Schanz,[3] an employee-officer of the corporation, became suspicious that the profit shown on the statement of operations prepared by Lyons covering October was incorrect, being far short of what it should be as the result of a sudden increase in business activity. Lyons, faced with discrepancies in the statement and also those revealed by a hasty check through the accounts for the month, admitted he had taken two checks during October to tide him over a little difficulty and gave in settlement thereof the check and mortgage referred to in Footnote No. 2. When this same employee-officer found still further evidence of error while trying to learn how to keep the books and accounts, a complete audit was made by a competent accountant, revealing a shortage of $20,426.05 during the period from April 1944 through October 1950, checks, totalling more than $16,000 having been cashed by the defendant Smith, a resident of Texas who owned and operated a bar and restaurant in Calcasieu Parish on the highway between Lake Charles and Beaumont,[4] and, in connection therewith, cashed, as a convenience and without charge, checks of employees working in the plants in the vicinity, handling in a night as much as $10,000 in this manner.

▬ After carefully studying the record, we are constrained to conclude, as did the trial judge, that the plaintiff totally failed to prove any conduct on the part of Smith that could have brought him within the purview of Article 2324 of the Revised Civil Code and the jurisprudence thereunder, upon which plaintiff's suit is predicated and which provides: "He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person,

---

3. Schanz succeeded to the presidency upon the death of his brother shortly after the shortage was discovered.

4. The record also shows Smith rented out a part of the establishment to various persons who operated gambling in the rented space.

for the damage caused by such act." See Little v. Campbell, La.App., 20 So.2d 627.

Counsel representing plaintiff nevertheless argue here, both orally and in brief, that (1) inasmuch as Smith cashed these checks without inquiry as to Lyons' authority to endorse and negotiate them, a fact he could have easily ascertained, this constituted "negligent ignorance" on Smith's part, which had the effect in law of actual knowledge, and thus placed him in the position of having aided and assisted Lyons in embezzling funds, for which he is answerable in solido under Article 2324, and (2) in any event, the money received by Smith under this unauthorized endorsement was not money due Smith and he is, therefore, obliged to restore it to plaintiff whether he received it through error or knowingly under the provisions of Article 2301 of the code.[5]

There is clearly no merit to the first contention since plaintiff, as stated by the trial judge in his written reasons for judgment, has already conceded in the lower court it failed to establish its case so as to bring it within the purview of the provisions of Article 2324. Furthermore, taking plaintiff's own brief, wherein it is admitted that in order to prevail on this theory it was required to establish that Smith, in cashing the checks, had knowledge of Lyons's ap-

propriation of the funds and himself profited by the transactions, we find the concession that "the record fails to prove that Lyons lost a substantial part of the proceeds from the checks in gambling with Smith." In fact, the record fails to establish that Lyons lost any money gambling with Smith or in a place operated by him, or that Smith, in fact, derived any benefit or profit of any kind from Lyons's manipulations. Moreover, as will be shown hereafter, the checks were cashed by Smith in good faith, for full value, and without knowledge of any defalcation.

The second argument is equally without merit. Plaintiff having elected to sue in tort, a quasi-offense, under Article 2324, waived any right it may have had to recover in quasi-contract under Article 2301. Morgan's Louisiana and T. R. & S. S. Co. v. Stewart, 119 La. 392, 44 So. 138; State v. Younger, 206 La. 1037, 20 So.2d 305. But if we were to concede that under the pleadings this particular action has not been waived, Article 2301 must be read and considered together with the negotiable instrument law of this state—particularly R.S. 7–52 and R.S. 9:3804 et seq.—and plaintiff still cannot recover under the facts of this case.

It is unmistakably shown that the authority of Lyons to endorse checks payable to the corporation in the course of its

---

5. Article 2301 provides: "He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."

business had never been previously questioned. He had full and complete charge of the business office, including the handling of the mail, keeping of the books, auditing, preparation of income tax returns and statements, and banking. The fact that after endorsing the checks he cashed them and converted the funds to his own use instead of depositing them in the bank to the credit of his principal is of no moment. Smith, in cashing these checks, did so as an accommodation in due course of business, without knowledge of Lyons's defalcation and for full value. The checks were then deposited in Smith's bank and by that bank sent to the maker's bank, where they were duly honored. Besides, it is revealed by the evidence that many of the checks Lyons cashed with other parties than Smith were negotiated through the Calcasieu Marine National Bank of Lake Charles, where plaintiff kept its account, and the endorsement of Lyons was not there questioned. In fact, Lyons actually cashed one of the checks at the bank himself and retained the money there given him upon his endorsement.

We think, as did the trial judge, that "if plaintiff sustained its loss, it was because of its failure to have audits of its books frequently enough and its undue confidence in its officer, Lyons, and the further fact that they encouraged him in his gambling activities," the evidence disclosing further that Lyons habitually engaged in card games with other members of the corporation both at the office and at home, with stakes running considerably higher than is generally encountered in a friendly game. He apparently lost to these members most, if not all, of the sums he secured by cashing the checks with Smith.

Under these conditions we find particularly applicable the following quotation from American Jurisprudence: "Where the prejudicial situation has resulted from the wrongful act of a third person, the decision must be against the party whose conduct made possible the wrongdoer's act, breach of trust, fraud, or negligence. It is said: 'As between two innocent persons, one of whom must suffer the consequences of a breach of trust, the one who made it possible by his act of confidence must bear the loss.' * * * Thus, where the owner of a negotiable instrument has intrusted the note or check to another and the latter, in violation of instructions, has transferred the instrument to one who has taken it innocently or without knowledge of the breach of trust, the loss must be borne by the owner rather than by the transferee." Volume 19, page 335, Section 484. See, also, Young v. Gretna Trust & Savings Bank, 184 La. 872, 168 So. 85; Whittington Co. v. Louisiana Paper Co., 224 La. 357, 69 So.2d 372, and the authorities therein cited.

The conclusion we have reached renders it unnecessary for us to consider the prescriptive plea of one year.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.