HERGET, Judge.
Plaintiffs, husband and wife, seek judgment against the defendant because of the alleged tortious acts of defendant in (1) illegally repossessing a motor vehicle which defendant had sold to plaintiff, Valley Williams, and (2) resulting from an alleged assault and invasion of privacy of plaintiffs.
After hearing the case, the Trial Court, for oral reasons assigned, rendered judgment rejecting the demands of plaintiffs and dismissed their suit. It is from this judgment plaintiffs have appealed to this Court.
On July 31, 1957 plaintiff, Valley Williams, purchased from defendant a 1950 Oldsmobile automobile on credit. The evidence shows said plaintiff was delinquent in the payments on the credit portion of the sale. According to plaintiffs, defendant, accompanied by one of his employees, called at the home of plaintiffs between the hours of 12 midnight and 2 o’clock a. m. on or about February 24, 1958 and blew the horn on his vehicle until plaintiff Velma Williams awakened her husband Valley Williams and he went to the door, at which time defendant was admitted to plaintiffs’ home upon his threat to do great bodily harm to plaintiffs or obtain some payment on the balance due on the purchase price of the Oldsmobile automobile or the automobile itself. According to plaintiffs, it was only after such threats that Valley Williams turned the key to the car over to defendant and delivered possession thereof to him.
In the petition it is alleged the defendant demanded the delivery of the keys from plaintiff at gunpoint and, further, armed with a shotgun that he entered the home of the petitioners; that Velma W. Williams had been sleeping and defendant advised both plaintiffs that he was going. to obtain possession of the Oldsmobile automobile even if he had to use the gun he carried in order to do so. Further, Velma *443 Williams alleged that upon seeing the defendant together with his agent or employee in her bedroom armed with a firearm she became frightened and hysterical and begged her husband, Valley, to give the defendant the car and the keys and everything or anything else which he might wish because of her fear. Plaintiffs as witnesses, however, varied substantially from these allegations, neither testifying that defendant was armed. Valley Williams said when he opened the door of his home he saw a shotgun in the car in which defendant had come to his home and for that reason and because of the statement made to him by the defendant that he would use it if necessary to obtain the car or the money he turned the keys over to defendant. Velma Williams testified she heard defendant make such threat to her husband, but she said further on cross-examination when he appeared in-her room he was very courteous and did not have a gun and apologized when he found she was sick.
In addition, there was testimony offered by witnesses subpoenaed by plaintiffs to the effect there had been a disturbance at the plaintiffs’ home that night but there is no evidence from disinterested witnesses that the defendant was responsible for such disturbance.
Defendant admittedly went to plaintiffs’ home on the night of February 24, 19S8, he said he thought at about the hour of 10 p. m., and called on Valley Williams to. make some payments on the delinquent balance due on the purchase price of the car and the said plaintiff, being unable to pay any amount on the balance, voluntarily requested the defendant to take the car and he would make arrangements to get it back.
Despite the fact, according to plaintiffs’ testimony, defendant obtained the vehicle from Valley Williams that night upon threats and displaying a shotgun and with force, intimidation, duress and through coercion, admittedly Valley Williams went to defendant’s place of business the following Friday and upon payment of a portion of the balance due on the automobile he, Valley Williams, gained repossession of the car and, in addition, defendant at that time gave title to the car to him. When asked whether or not he was not afraid to go to defendant’s place of business, he replied:
“A. No, sir, I didn’t have no right to be afraid.
“Q. Were you ever afraid that you were going to be shot? A. I was shaky that night, but I figure when a man’s actions ain’t going to last that long and if I had went to his place he would not have did anything but drove me away, I don’t believe.” (Tr. test, page 53)
Furthermore, while under direct examination Valley Williams related that this visit to defendant’s place of business was suggested by his own counsel after he had conferred with him. This portion of his testimony, on page 41, reads:
“A. * * * Well, that would sound pretty true and I said . the next morning, I say, Well, I don’t know what to do,’ I come on across the river and I met Clarence Williams coming back and Clarence said, ‘Did two white men come to your house last night?’ and I said, 'They sure did,’ and he said, ‘They come by home and called me and I started not to tell them where you lived, but after they say you worked for Dow Chemical I thought it might have been something important and that’s why I told them where you lived,’ and I say, ‘Well, it wasn’t no harm done,’ and I turned it off like that and I come home and the next two or three days after that I come in and consulted with you and you told me to go ahead back home, there wouldn’t be nothing to it, and you would write Mr. Bond a letter and I come back over here that Saturday *444 . that Friday and you told me, you sajr, ‘If I was you I would just go up there and ask the man for my car,’ and I went on up there and Mr. Bond wasn’t there when I got out there and I stayed there and waited until he come and I had my pay check from Dow Chemical, $47.00 or $48.00 and something and I endorsed the check and give it to him and I got the car and I come on home and a few weeks after that I called him and when I called him, well, I can’t say what he said, but he really cussed me. * * * ”
Analyzing the above statement of plaintiff and thereby attempting to evaluate the credibility to be accorded plaintiffs’ testimony that defendant had resorted to the use of force, firearms and profane language in obtaining possession of plaintiffs’ Oldsmobile on the 24 of February, 1958, and rationalizing the picture presented to us, it seems more than passing strange that (a) upon meeting his friend Clarence Williams who had directed defendant to plaintiffs’ home on the night of February 24, 1958, he would inform his friend on the very next day “Well, it wasn’t no harm done”; (b) when Valley Williams went to defendant’s place of business to get his car back five days later everything would be so agreeable and upon his calling the defendant some weeks thereafter the defendant would curse him; (c) if the actions on the part of the defendant had in truth and in fact taken place at his home on February 24 and he had so informed his counsel of such occurrences two or three days thereafter his attorney would advise him “If I was you I would just go up there and ask the man for my car” ; (d) Valley Williams, unless he had consented to defendant taking his car on the night of the 24 and agreed to pay something on the delinquent installments, would go to the defendant’s place of business and voluntarily pay some $47 or $48 on the account and regain possession thereof. And still evaluating the truthfulness of plaintiffs and the weight to be attached to their testimony, it seems incredible to us if plaintiffs had informed their counsel of the horror laden night of February 24-two or three days thereafter suit for such alleged tortious acts would have been delayed until July 23, 1958.
The record is filled with interrogations-from the Trial Court as to the question of whether or not any threats were made-on the night of February 24, the date of the alleged repossession of the car by defendant, and it is evident by doing so the-Trial Court was giving close attention and', observing the witnesses and their demeanor upon the witness stand, for the Court was no doubt aware of the fact the resolution of the issue would be determined upon a question of credibility.
If the defendant had resorted to the’ acts which plaintiffs described, it would appear to us to be unbelievable for plaintiff to go to defendant’s place of business-unaccompanied by anyone for the purpose of obtaining the return of the vehicle. Such seems to be so for the reason (1) if in truth the defendant had acted in the manner plaintiffs described, plaintiff would have been fearful of going to defendant’s place of business unaccompanied; and (2) if defendant had resorted to the threats, coercion, intimidation and invasion of the privacy of plaintiffs as alleged by them-, Valley Williams would have been so affected by such actions that certainly he would not have wanted to continue any business relationship with defendant. Especially does this seem logical in view of the fact the plaintiff wife gave such a description of horror of the visit made by defendant to their home.
As hereinbefore stated, the Trial Judge assigned no written reasons for his judgment rejecting the demands of plaintiffs but the only basis on which such a resolution could have been made would be that he did not believe the testimony of plaintiffs and they had failed to prove their case by a preponderance of evidence.
*445 In a factual situation such as set forth in this suit, we believe unless there is manifest error in the conclusion of the Trial Court, this Court must give great weight to its decision; especially is this so, as heretofore pointed out, when the decision must, of necessity, be based upon the credibility of the witnesses.
Therefore, for these reasons, the judgment of the Trial Court rejecting the demands of plaintiffs at their costs will be affirmed.
Judgment affirmed.