149 So.2d 732 (1963)
Jessie FORTENBERRY
v.
Edward C. SCOGIN, H. W. Givens, Inc., O'Neil Peters, and The Aetna Casualty & Surety Co.
No. 5722.
Court of Appeal of Louisiana, First Circuit.
January 18, 1963.
Rehearing Denied February 22, 1963.
Certiorari Refused April 17, 1963.
*733 Frank S. Bruno, New Orleans, for appellant.
Pittman & Matheny by Iddo Pittman, Jr., Hammond, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
REID, Judge.
This is a suit for workman's compensation benefits brought under the provisions of the Louisiana Workmen's Compensation Laws. Plaintiff alleged that he hurt his hand when he slipped and dropped a stick of pulp wood on it on October 5, 1960. The defendants, Edward C. Scogin, H. W. Givens, Inc., and Aetna Casualty and Surety Company, filed an answer admitting the accident as alleged in plaintiff's petition but denied the plaintiff was employed by them, asserting he was an employee of an independent contractor, Defendant O'Neil Petters. Seven days before this cause was tried the above defendants amended their answer alleging that the accident did not result from plaintiff's employment but was sustained in a fight in a colored night club prior to October 5, 1960. Obviously plaintiff announced himself ready for trial on June 6 as there is no objection in the record. Defendant O'Neil Peters filed no answer nor other pleadings, nor was he represented by counsel at the trial of this matter.
From a judgment dismissing his suit, plaintiff prosecutes this appeal.
The issue before this Court is purely factual and is whether petitioner injured his hand on October 5, 1960 while in the scope and course of his employment or whether he injured his hand in a fight previously while off duty.
Although plaintiff gives a plausible account of the injury, there is no corroboration in the evidence which would support his account. Joe Collins testified on behalf of plaintiff that he did not see the accident, but he remembered plaintiff coming to him and telling him he had just hurt his hand by dropping a stick of pulp wood on it. However, this testimony must be completely disregarded as, on two previous occasions, Collins gave written statements directly contradicting this account and supporting defendants' contention the plaintiff received his injury in a fight in a night club. Both statements are in evidence; one is a statement made to a Notary and two witnesses; the other is a statement given an insurance representative. The latter statement was witnessed by one of the defendants who testified at the trial that the statement was the same that was given by Collins and that it was read back to Collins and signed by him. In view of these statements the Court cannot give any weight to the testimony of Joe Collins.
Plaintiff called his common-law wife in an effort to prove that she first knew of the accident when he came home from work on the evening of October 5, 1960. However, she testified she first became aware of the injury when the plaintiff came home on the morning of October 5, 1960. The record is clear that it was late in the afternoon before the crew returned from the woods. She testified she had never seen the hand unwrapped before the cast was taken off some five weeks later. On the other hand the plaintiff stated that he showed her the hand with the wrapping off prior to its being placed in a cast.
O'Neil Peters testified the plaintiff showed him his hand on Sunday prior to October 5, 1960 and that he and the plaintiff laughed about the incident and plaintiff expressed concern and doubt that he would be able to work the following Monday. Peters testified the plaintiff had told him the accident occurred in a Negro saloon when his hand was struck by a chair during an altercation over a woman and some whiskey.
Dr. Jacob Kety, the physician who treated the plaintiff, testified he first saw him on October 6, 1960. He stated that from his examination of the hand the injury appeared to be from 48 to 96 hours old. Dr. Kety further testified that following an injury *734 such as this it would be possible for the plaintiff to work for two or three days after the injury as it would take this long for complications to set in and the pain to become severe enough to prevent heavy work. Dr. Kety's testimony corroborates the testimony of O'Neil Peters wherein he claimed the plaintiff worked Monday and Tuesday but he was limited to light work. Dr. Kety's testimony also casts doubt on the testimony of plaintiff's common-law wife as it shows the hand was untreated for an entire night and it is doubtful that she would not have seen the hand prior to its being placed in a cast.
Although plaintiff steadfastly maintained that he was disabled from the time of this accident until the time of trial the testimony of O'Neil Peters shows that plaintiff had been working for some time prior to trial. This is just another instance where the testimony of plaintiff is frought with inconsistences.
The decisions of our Courts are legion establishing the propositions that the Trial Court's findings of fact will not be reversed unless there is manifest error and that the Trial Court's finding of fact is entitled to great weight. Baker v. Great American Insurance Company (La.App. 1961) 134 So.2d 567 and Williams v. Bond (La.App.1961) 126 So.2d 442.
For these reasons the judgment of the Trial Court is affirmed.
Affirmed.
HERGET, Judge (concurring).
I am of the firm opinion, following examination of the evidence in the record, the issues raised by this appeal both on the law and facts have been correctly resolved by our decree herein. However, I take exception to that portion of the opinion predicating affirmance of the judgment of the Trial Court on the finding "The decisions of our Courts are legion establishing the propositions that the Trial Court's findings of fact will not be reversed unless there is manifest error and that the Trial Court's finding of fact is entitled to great weight. Baker v. Great American Insurance Company ([La. App.] 1961) 134 So.2d 567 and Williams v. Bond ([La.App.] 1961) 126 So.2d 442.", thus thereby approbating the rule in the absence of no manifest error the appellate courts are bound by the pronouncements as to the facts by the expressions of the trial courts.
I must confess that in two cases, viz.: Blount v. Blount, La.App., 125 So.2d 66 and Williams v. Bond, La.App., 126 So.2d 442, as the organ of this Court I utilized the manifest error verbiage in affirming judgments of the trial courts. In doing so, however, I attributed to the expression the meaningmy opinion following a review of the records was in accord with that of the trial courtsnot, as the words imply or for that matter clearly say, that the decisions of the trial courts were affirmed inasmuch as no manifest errors were found in the opinions.
The true significance of this phraseology came to my realization at the Second Annual Conference of the Judges of the Courts of Appeal of Louisiana held in New Orleans, Louisiana on April 22, 1961 when a panel discussion of "The Rule" was provoked by an article appearing in XXI Louisiana Law Review, February, 1961, at page 402, (shown in part infra) written by David W. Robertson, (then a brilliant senior law student at Louisiana State University and Associate Editor of Louisiana Law Review and now a valued member of the distinguished law faculty of that institution) entitled: "COMMENTS Appellate Review of Facts in Louisiana Civil Cases." At this conference Honorable George W. Hardy, Jr., Presiding Judge, Court of Appeal, Second Circuit, State of Louisiana, delivered a paper entitled: "Forum Juridicum, The Manifest Error Rule" now recorded in Volume XXI Louisiana Law Review, 749, as of date June, 1961. From my reading of Judge Hardy's Article, it appears the rationale *735 of his conclusion was there no longer exists the raison d'etre for the application of the doctrine inasmuch as the rule was first announced and followed by the courts when, because of the sparsity of individuals in the rural communities, the trial judge was without question intimately associated with his constituents and had personal knowledge of their characters, accordingly being in a better position than an appellate judge reading the "cold record" to evaluate the credibility of their testimony and separate the wheat from the chaff; whereas, now, because of the concentration of the populace in communities, the trial judge, of necessity, not having this intimate relationship, is no longer in an advantageous position to justly weigh the evidence.
As a result of this panel discussion I became convinced The Manifest Error Rule was in direct contravention of the provisions of the Constitution of Louisiana, Article 7, § 10, LSA, vesting jurisdiction in the Supreme Court of this State in this language:
"In civil cases, its appellate jurisdiction extends to both the law and the facts. * * *" (Emphasis supplied.)
and § 29, endowing the Courts of Appeal with jurisdiction, the pertinent provisions insofar as this action is concerned are:
"All appeals of which the courts of appeal have appellate jurisdiction as provided in this Section shall be on both the law and the facts, except where the appeal is limited to questions of law only by any other Section of this Constitution." (Emphasis supplied.)
In Volume XXII Louisiana Law Review, page 605, in April of 1962, we find: "`Manifest Error' Further Observations On Appellate Review Of Facts In Louisiana Civil Cases," penned by another distinguished jurist of this State, Honorable Albert Tate, Jr., Presiding Judge, Court of Appeal, Third Circuit, State of Louisiana. As a preamble, Judge Tate therein expresses his reluctance to differ with Judge Hardy in these words:
"It is with some diffidence that I express views which vary from those recently stated by a very distinguished and brilliant appellate judge. I do believe, however, that the decades have not diminished the necessity for firm adherence to the principle of appellate review of facts followed in Louisiana since our earliest days as a state, that a trial court's factual determinations should not be disturbed upon review in the absence of `manifest error.'"
Fortunately, as my views are such I do not place myself in a position of intervening between these two jurisprudential giants, I can approach the subject without regard for the diffidence I would feel were I an interposing party.
I do not believe the question to be resolved is one addressing itself to the individual determination of the judge. To the contrary, my resolution of the question is predicated on the phraseology of the Constitution of the State of Louisiana. I am adamant in my belief if the verbiage thereof is clear and unequivocable, then we are called upon by LSA-Civil Code Article 13, to:
"When the law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
Similarly did Moses exhort the Israelites:
"Ye shall not add unto the word which I command you, neither shall ye diminish aught from it, that ye may keep the commandments of the Lord your God which I command you." Deut. IV 2. (Emphasis added)
The issue we are confronted with is called to our attention by Mr. Robertson in the article referred to supra, wherein, in his introduction, he said:
"The jurisprudence of Louisiana appears settled beyond doubt that findings *736 of fact made by a trial court will not be upset on appeal unless deemed `manifestly erroneous' by the appellate court.[1] The manifest error rule is often stated to be so well settled as to warrant no citations of support, and is articulated in most of the cases involving factual questions on appeal. At the outset, it should be noted that this doctrine receives a variety of types of application in the cases. In some, it appears fairly clear that the appellate court was in full accord with the factual conclusions drawn by the trial court, and invoked the manifest error rule merely as additional support for an already well-supported affirmance. In other cases, it appears that the doctrine is invoked in order to allow the appellate court to avoid stating which way it would have decided the case at the trial level, or to avoid reproducing or analyzing a lengthy or detailed trial court opinion. The applications of the manifest error rule to which this Comment is primarily directed might be termed the decisive uses of the doctrine. I. e., in a minor number of cases, the appellate court will state that the trial court's conclusions were manifestly erroneous and therefore must be overturned. In other cases, the appellate court may express disagreement with the conclusions reached by the trial court, but state that the court below was not so clearly incorrect as to be manifestly in error. In both of these latter type of cases, it may be said that the outcome of the appeal turned on the extent of applicability and meaning of the manifest error doctrine."
Under our government the Legislature of the State is vested with the lawmaking power and has jurisdiction of all subjects within the limitations imposed upon it by the Constitution. Further, without question, is the recitation that where the people in their sovereign capacity by constitutional province incorporate grants or restrictions in the Constitution of the State, such grants or restrictions are binding and the courts even more so are limited insofar as the grants or restrictions apply to them. They are placed in the position of the beneficiaries and the arbiters in determining the powers granted or withheld. They should, in all candor and honesty, restrict themselves in resolving such question to a determination based solely and entirely on the clear, unequivocable provisions of the Constitution.
I consider it sound constitutional law when courts have specifically given consideration to a provision of the Constitution and in reaching their decisions based their reasons therefor specifically on an article of the Constitution to accord to the interpretation thereby reached the meaning this is the Constitution. In other words, the Constitution is what the court so decrees. As noted by Mr. Robertson, there have been some 1000 cases in which the appellate courts have passed on the manifest error doctrine. Though I shall not, under any circumstances, represent I have examined all of the cases in the limited time allowed to me for this review, I did make a determined effort to check as many of them as time allowed, and in none, except in the hereinafter cited case, did I find wherein there was made any reference to the Constitution but the result in each decision *737 was reached when the court, without consideration of the plain, explicit provisions of the Constitution, decreed what has been categorized by many as "lip service" to the rule of manifest errorthe appellate court would not reverse the finding of fact by the trial court unless same were clearly erroneous. In such circumstances I do not consider the court has thereby given its interpretation in the light of the Constitution; but, to the contrary, apparently, the court acted without consideration of the pertinent provisions of the Constitution.
In the case of Von Eye v. Byrnes, 124 La. 769, 50 So. 708, at page 709, the Court said:
"Our appellate jurisdiction over the facts of the case compels us to reverse verdicts and judgments when they are clearly against the preponderance of the evidence.
"The same jurisdiction and the mandate of the Code of Practice compel us to render such judgment as should have been rendered below. * * *"
In the Syllabus by the Court, we find:
"The constitutional jurisdiction of this court over the facts imposes the correlative duty of reversing verdicts and judgments when manifestly contrary to the preponderance of the evidence, and of rendering such judgment in the case as should have been rendered in the court below."
From a reading of the case, it is apparent the conclusion of the Court as to its jurisdiction is not couched in the language of the Constitution.
I cannot, under any circumstances, rationalize, as suggested by Judge Tate, in the face of the clear and unambiguous verbiage of the Constitution the courts' right to change or in any way affect the jurisdiction or the right of appeal so granted to the litigant by the Constitution; nor can I under any circumstances persuade myself the appellate court should not reverse a factual decision of the trial court in the absence of manifest error; nor am I imbued with any impropriety in those instances wherein the appellate court might have decided a case differently by construing the evidence contrary to that of the trial court for in doing so it is doing nothing other than complying with the Constitution of the State. Explicitly the Constitution grants a litigant an appeal on both the law and the facts. Constitutionally, there is no basis for the view the appellate judge is required to accept the finding of fact of the trial court, though it differs from his own. Likewise, I am not in accord with the statement (from Judge Tate's Article supra. Page 612): "For, if no weight at all is given to the trial court's finding, then we might as well dispense with the trial below as an empty and time-wasting ceremonial. * * *", for the reason that appeals are not taken from by far the greater number of decisions of the trial courts; however, conceding, if granted the constitutional right so explicitly set forth in our Constitution, more appeals would be filed if the litigant were apprised of the knowledge the appeal would be reviewed on both the law and the facts, the courts have no authority to curtail such appeals, even under such compelling reasons. In short, we have no basis for substituting our views however persuasive, well founded and soundfor the directives appearing in the Constitution by which we are bound. Though in an effort to assuage our consciences we may resort to subtle and tenuous recitations to bolster our views, how can anyone read the clear, unequivocal and explicit constitutional provisions herein involved and attribute with any degree of reason any other meaning than that the litigant in Louisiana is, on appeal, guaranteed a review by the appellate court on both the law and facts? There is absolutely no rational basis on which the court may deny the litigant a review on the facts and grant a review on the law. Such result could only be obtained upon the court's arbitrary decision to deny specifically granted constitutional rights to the litigant. I believe this to be wrong inasmuch as it denies, without valid reason, the vested constitutional *738 rights of the litigant and, until directed otherwise by the Supreme Court of this State, I shall continue to review the record on appeal on the law and the facts and not on the question of the determination of the erroneousness of the decision of the trial court, and express my opinion on the issues presented on my own resolution of same. I have at all times and shall always give serious consideration and attention to the views expressed by the trial judge and especially do I find it of great assistance when the issue of the credibility of the witness arises and the court giving reasons therefor expresses why it believes or does not believe a witness; but should I differ with the conclusion reached by the trial judge, without in any way according to myself any omnipotence, I would feel that without my being convinced of the verity of the opinion I would not have complied with my oath of office if I did not express such difference.
I concur.
NOTES
[1] "The vast majority of cases involving factual problems on appeal contain statements attesting to the universal applicability of the manifest error rule. The Louisiana Digest lists upwards of 1000 manifest error cases. In Succession of Fields, 222 La. 310, 319, 62 So.2d 495, 498 (1952), the court stated: `Counsel for defendant makes reference to 500 cases or more to the effect that a judgment of the trial court on questions of fact will not be disturbed on appeal unless manifestly erroneous.' In The Work of the Louisiana Supreme Court for the 1946-1947 TermCivil Procedure, 8 Louisiana Law Review 261, 268 (1948), it was stated: `The settled rule that the trial court's findings of fact will not be disturbed on appeal unless deemed manifestly erroneous received its annual application in three of the decisions of the supreme court.'"