CHRIS T. BARNETTE, Judge pro tem.
Some time in the latter part of the year 1957 the drilling barge “MR. K” overturned in the Gulf of Mexico. Subsequently, the hull was salvaged and purchased by American Marine Corporation and others who undertook the renovation and refitting of the drilling barge and rig. When the salvage of the drilling barge was complete there remained on the floor of the Gulf various pieces of machinery and equipment which had not yet been salvaged, and it was determined that these should be removed from the scene of the accident. Upon completion of the major part of the salvage operations, the salvage contractor engaged James J. Davis and Taylor Diving & Salvage Co., Inc. to remove the remaining pieces of the machinery and equipment from the floor of the Gulf in return for which Davis and the Taylor Company were allowed to retain such equipment and machinery as they recovered.
*165 Among other things brought up for salvage was a piece of equipment known in the oil well drilling industry as a swivel. Whether or not a swivel complete with all component parts was recovered, or an incomplete one, is one of the issues of fact in this case. The swivel brought up was loaded on the salvage barge and delivered to defendant company, American Marine Corporation, at its Florida Avenue shipyard. Thereafter defendant moved all or parts of the swivel so delivered to its main shipyard for a closer inspection with a view to its purchase from the plaintiff if found to be satisfactory. Defendant was interested in the purchase of this particular swivel because it had already bought other parts of the drilling equipment salvaged from the “MR. K” and was interested in reassembling the complete drilling unit.
On May 21, 1958, Mr. William Stein, Jr., of the law firm of Lemle and Kelleher wrote a letter to defendant company on behalf of Davis, complaining that the swivel had not been returned nor paid for, in spite of his demands. The letter concluded with an invitation to discuss an amicable settlement. On June 26, 1958, another letter on behalf of plaintiff Davis was written by James J. Morrison, his attorney, wherein he charged defendant-appellant with conversion, and demanded that he immediately return the swivel or be held responsible for damages. Defendant-appellant places great stress upon these two letters in determining the date from which prescription began to run against plaintiff's action in tort.
Plaintiff’s original petition filed August 21, 1959, charged defendant with conversion of the swivel and seeks damages in the amount of $6,000.00. To this petition defendant filed a plea of prescription on October 1, 1959. On October 13, 1959, plaintiff filed a supplemental and amending petition reaffirming his original .and adding an alternative claim for restitution and return of the swivel with damages for wrongfully withholding it and for rental at $100.00 per month. Defendant filed another exception reurging the plea of prescription and subject to and with reservation of rights under its exception of prescription, filed its answer to the original and supplemental petitions.
A hearing on the exception of prescription was had and the exception was overruled on November 20, 1959. No further action was taken for more than three years except to grant continuance and a pretrial conference in March, 1961. It appears, however, from the record that other issues between Davis and the defendant were being litigated in other courts in the meantime.
On January 17, 1963, the case was called for trial on the merits, testimony taken and continued.
At this stage of the proceeding on January 30, 1963, Taylor Diving and Salvage Company, Inc. filed a petition with the concurrence of Davis joining Davis as a plaintiff, reaffirming and adopting Davis’ pleadings and asserting its half interest in the salvage venture with Davis and its undivided half interest in the ownership of the swivel. Thereafter they assume the position of co-plaintiffs.
Defendant filed a timely answer to this second supplemental and amending petition in which it reassumed the position previously taken, again pleading plaintiffs’ election to sue in tort and reurging its plea of prescription. Defendant moved to set the exception of prescription for further hearing, and by agreement the transcript of the testimony previously taken on this issue November 20, 1959, was admitted. On March 19, 1963, the exception of prescription was overruled again.
On May 13, 1963, over five years from the delivery of the swivel to defendant-appellant trial was resumed and on May *166 28, 1963, judgment was rendered in favor of plaintiffs recognizing them as owners of “one complete oil derrick swivel” and ordering defendant to deliver it on demand, plaintiffs to bear cost of removing it from defendant’s property. In event of failure of delivery the plaintiffs were to have judgment in the sum of $2,864.00. Defendant’s claim, in reconvention of $291.62 and for lien against the swivel for services rendered thereon for plaintiffs was denied.
Motion for new trial was filed and overruled June 4, 1963. August 29, 1963, a devolutive appeal to this Court was granted and bond filed.
In the meantime plaintiffs had attempted execution of the judgment by causing a writ of possession to be issued. Plaintiff Davis went with the deputy sheriff charged with the execution of the writ and refused to accept the swivel pointed out to them b.y defendant for the' alleged reason that it was not a “complete” swivel. Thereupon plaintiffs caused a writ of fieri facias to issue and obtained garnishment of the Whitney National 'Bank. Defendant sought to quash the' fieri facias and dissolve the garnishment on the ground that the defendant had not refused to deliver the swivel and plaintiffs had' no right to elect to seek execution of the monetary judgment.
On trial of rule to show cause why the fieri- facias should not be quashed and the garnishment dissolved, defendant attempted to offer testimony that the swivel tendered the deputy sheriff and Mr. Davis was as complete as when received by them in March, 1958. The court said that rightly or wrongly it had held that a “complete” oil derrick swivel was received by defendant as bailee and refused to hear any testimony unless it be to show that defendant offered delivery of a “complete” swivel. The defendant could not discharge the burden of proof and the rule was dismissed,' from which ruling defendant has appealed. The following questions are presented for our determination:
1. Did plaintiffs-appellees deliver to defendant-appellant a complete oil derrick swivel?
2. Did defendant-appellant perform services on the swivel for account of plaintiffs-appellees for which it is entitled to payment of $291.62 and for which amount it had a lien against the swivel?
3. Was there a conversion, and if so, did plaintiffs’ right of action prescribe before suit was filed?
4. Did defendant-appellee comply with the specific performance aspect of the judgment of May 28, 1963, by tendering a complete oil derrick swivel ?
 The first, second and fourth questions present issues of fact which we think were correctly answered by the trial court. We have read very carefully the transcript of testimony and concur with the findings of the trial judge that a' preponderance of the evidence supports the conclusion that plaintiffs-appellees did deliver a complete B-24 Bethlehem oil derrick swivel. We further concur in the findings of the trial court that whatever work or services performed by American Marine Corporation on the swivel were for' its own primary benefit to determine the condition of the swivel, its value and the practicability of reassembling the original drilling unit of which this particular swivel was a part, all with a view of purchasing the swivel for a price to be agreed upon. The trial judge’s answers to questions one and two were correct and must be sustained.
Through the long drawn out proceeding the issues were thoroughly litigated and the trial judge’s findings of fact not only do not reflect a manifest error, but we think are abundantly supported by the testimony of the witnesses. His findings *167 are entitled to great weight and in the absence of manifest error should be sustained. Orlando v. Polito, 228 La. 846, 84 So.2d 433; Fortenberry v. Scogin, La. App., 149 So.2d 732; Oubre v. Judice, La. App., 147 So.2d 745; Platt v. Scarborough, La.App., 108 So.2d 802; Patton v. Argonaut Underwriters Insurance Co., La.App., 110 So.2d 142; Hatten v. Olin Mathieson Chemical Corp., La.App., 112 So.2d 135.
When the deputy sheriff attempted to execute the writ of possession in accordance with the judgment of May 28, 1963, defendant-appellant did not point out or offer to deliver a complete swivel, but admittedly one from which some parts were missing. For this reason we find the judgment of the trial court in dismissing the rule to quash the fieri facias and dissolve the writ of garnishment to be correct. This answers question number four.
We now turn our attention to the more serious issues of law and fact presented by the third question.
The defendant-appellant strongly urges the exception of prescription and relies on Article 3536 of the LSA-Civil Code which establishes a one year prescriptive period for actions in tort. It contends that this is an action in tort, being a suit for conversion, clearly borne out by the demands of plaintiff Davis through his attorneys by letters of May 21 and June 26, 1958, the latter in particular, in which he specifically charged defendant with conversion and threatening suit for damages unless the converted swivel was returned within five days. Defendant-appellant contends further that the suit filed August 21, 1959, more than one year from the date of this letter, is a suit sounding in tort and was therefore prescribed, citing Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574.
Defendant-appellant argues that the supplemental and amending petition, reaffirming the charge of conversion but concluding with an alternative prayer for restitution of the property with damages did not change the nature of the action' from one in tort. Defendant contends that the plaintiff, having made an election to' sue in tort for conversion could not thereafter abandon his course of action and elect to pursue one in quasi-contract, citing authorities including Cipriano v. Sherman, 234 La. 60, 99 So.2d 23 (1958); Evangeline Iron Works v. Lyons, 233 La. 307, 96 So. 2d 578 (1957) ; Edward Levy Metals, Inc. v. New Orleans Pub. Belt R. R., 139 So. 2d 80 (La.Court of Appeal, 4th Cir. 1962, reversed on other grounds, 243 La. 860, 148 So.2d 580).
We find no need to discuss these authorities in view of our final conclusions herein. The theory of the case doctrine with which they deal is not an- issue here.
In the section on Conversion in Prosser on Torts (page 74 et seq.), the author comments as follows:
“Withholding Possession”
“It is a serious interference with the owner’s control of the goods to refuse to surrender possession to him when he is entitled to it. A defendant who has come rightfully into possession in the first instance, as for example by a bailment, becomes a converter when he refuses to deliver on demand. Since there has been no wrongful taking or disposal of the property, demand and refusal are necessary to complete the tort.
“An absolute, unqualified refusal to deliver, which puts the plaintiff to the necessity of force or a lawsuit to recover his own property, is a conversion * *
In this particular case, the defendant Marine Company was in rightful possession of the swivel originally because the swivel was voluntarily delivered to its yard. The tort of conversion therefore began only when in the words of Prosser “an absolute, unqualified refusal to deliver, *168 which puts the plaintiff to the necessity of force or a lawsuit to recover his own property,” occurred.
As noted in the statement of facts, the swivel was brought to defendant’s yard on or about March 1, 1958. The swivel was delivered to the yard of the defendant according to the finding of fact by the trial judge so that the defendant could inspect the swivel with intention of buying it if found to be satisfactory.
Apparently, negotiations reached a stalemate over claims defendant held against plaintiff arising out of prior transactions, but negotiations were not cut off entirely and the doors to amicable settlement of all claims were left open. This is borne out by Mr. Stein’s letter of May 21, 1958. At this point there was no conversion.
The letter of June 26, 1958, by plaintiffs’ attorney, Mr. Morrison, followed by action in tort for conversion, more than a year later, would seem to support defendant’s plea of prescription, except that subsequent negotiations continued to a time well within a year of the date suit was filed and notwithstanding the letter of June 26, conversion had not begun.
What transpired after this letter was written is of great importance. On the trial of the exception of prescription, Mr. Morrison testified that the plaintiff agreed in effect to allow the defendant to keep the swivel while negotiations were going on over its purchase by defendant. Defendant maintained that these negotiations were compromise negotiations over the counterclaim asserted against plaintiff for the cost of disassembling the swivel and for other debts not connected with this case. It is relevant to mention here that after his letter of June 26, 1958, Mr. Morrison received a letter from the firm of Milling Saal, Saunders, Benson & Woodward, who were representing the defendant, confirming a telephone agreement with Mr. Morrison to take no further action on the case until Mr. Marshall returned to the office of the Milling firm on July 14. There was no conversion at this point.
After hearing testimony on the exception of prescription, the trial judge overruled the exception, holding that after Mr. Morrison’s letter of June 26, 1958, the parties entered into negotiations over the purchase of the swivel by the defendant with the plaintiff willingly allowing the swivel to remain on defendant’s lot. This is shown by the comments of the trial judge on this matter, (page 44 of transcript)
“THE COURT:
“I would be glad to hear further from both or either counsel on this question. The question resolves itself around, as I appreciate it, whether or not there was a definite demand, and whether or not what subsequently ensued were negotiations toward compromising. You have in here some other matters about claims and counterclaims * $ if”
The trial judge found as a matter of fact that after Mr. Morrison’s letter of June 26, 1958, the parties entered into negotiations for the purchase of the swivel and for settlement of claims between them arising out of other transactions. This is clearly shown by defendant’s letter of January 7, 1959, proposing to buy the swivel from the plaintiff for $1,500.00 and terms for settlement of their other differences. During this time plaintiff and defendant by mutual assent allowed the swivel to remain on defendant’s lot. This state of affairs continued at least until after January 7, 1959, well within one year of the filing of suit. The elements of a conversion were not present at this point. There was no demand of the plaintiffs and refusal of the defendant to deliver the swivel. On the contrary, the plaintiffs allowed defendant to keep the swivel as long as they thought that defendant was contemplating its purchase. These facts are abundantly shown by testimony of the parties on the trial of the exception. Having found this, it is not *169 necessary to pinpoint the exact date when conversion began. The important thing is that the conversion did not begin more than one year from the filing of this suit and therefore the plea of prescription is not valid.
The trial court found a reasonable value of the swivel delivered to defendant to be $2,864.00. .This represents one-half the list price of Bethlehem Supply Company for a new swivel of the same model. The testimony of the witnesses fixing the value at one-half the list price for a used swivel does not appear to be disputed. This estimate of value is further supported by the testimony of plaintiff Davis that he had an offer of purchase from Taylor Equipment company for $2,600.00 after it had been disassembled and that $250.00 would be a reasonable charge for reassembling it. Thus, we think the judgment of the trial court fixing its value at $2,864.00 to be well supported by the evidence.
The judgments appealed from are affirmed.
Affirmed.