Eumes J. GRIFFIN, Jr. and Nolte Griffin

v.

HUNT TOOL COMPANY.

Civ. A. No. 66-744.

United States District Court
E. L. Louisiana,
New Orleans Division.

June 28, 1968.

John J. Erny, Jr., Diaz & Erny, Golden Meadow, La., for plaintiff.

N. B. Barkley, Jr., Lemle & Kelleher, New Orleans, La., for defendant.

MITCHELL, District Judge.

Plaintiffs, Nolte Griffin and Eumes J. Griffin, Jr., filed suit against Hunt Tool Company for damages allegedly sustained as the result of a seizure by Hunt of two propellers belonging to the Tug *Southerner*, a vessel owned by G & G Towing Company, a partnership composed of Nolte Griffin and Eumes J. Griffin, Jr.

One of the plaintiffs, Nolte Griffin, had previously contracted with defendant for repairs to the Tug *Boy*, which he formerly owned, for which repairs he was indebted to defendant in the sum of $1,727.31. Nolte Griffin openly acknowledges that indebtedness, for which defendant counterclaimed against him in this action.

On April 30, 1966, the *Southerner* was engaged in the transportation of shells for Little Lake Dredging Company at a hire rate of $240 per day. Her master, Loris Lee, noticed that her right propeller was not functioning properly. He contacted Nolte Griffin, who, after making an underwater inspection of the propeller, instructed Lee to take her to Tibo Shipyards for repairs. Captain Lee misunderstood Griffin's instructions and took the *Southerner* to defendant's shipyard.

There is serious conflict in the evidence as to the events which transpired at the shipyard. The court accepts plaintiffs' version as being the most credible.

After arriving at the shipyard, the *Southerner's* stern was lifted out of the water and Captain Lee instructed defendant's representative to repair the right propeller by retightening the nut at the end of the propeller shaft and replacing the cotter pin. Shortly thereafter, Captain Lee was informed by his deckhand

that shipyard personnel were removing both propellers and both rudders. Lee promptly protested and was informed by shipyard personnel to contact Nolte Griffin and to tell him to bring some $1,700 if he wanted to get his boat back.

Since the vessel no longer could navigate, Lee retrieved the rudders, which had been left on the dock, and made arrangements, that night, to have the *Southerner* towed from the shipyard to Harvey, Louisiana. Upon being informed of the seizure of the propellers, Nolte Griffin contacted defendant shipyard's personnel and was told that he would have to pay the $1,727.31 that he owed for work on the other vessel, the *Boy,* in order to secure the release of the *Southerner's* propellers. Nolte Griffin offered to pay the costs of the repairs to the *Southerner* but that was unacceptable to defendant.

Some days later Nolte Griffin, accompanied by Roy Barrios, again returned to the shipyard, in another attempt to have the *Southerner's* propellers released by paying the current indebtedness. At this meeting Barrios told Vincent Moore, general manager of the shipyard, that he would personally guarantee the payment of the $410.97 due for repairs to the *Southerner's* propellers, but Moore declined to return the wheels unless Barrios also guaranteed the payment of the $1,727.31 due for repairs to the *Boy.*

Since no other propellers which would fit the *Southerner* could be readily obtained, the *Southerner* was inoperative and the plaintiffs lost their contract to transport shells for Little Lake Dredging Company. Because of this, Nolte Griffin was forced to sell his share of the vessel inasmuch as, without the income derived from the contract, he was unable to make the monthly payments due on the vessel.

It was not until July 22, 1966, that plaintiffs finally effected the release of the propellers from defendant and were able to get the *Southerner* operative once again.

Although, under Louisiana law, defendant had a privilege for the current work being performed on the *Southerner,*[1] this privilege did not extend to work performed on another occasion on another vessel.

The conduct of defendant's employees constituted a wrongful conversion of the plaintiffs' property. In Lafleur v. Sylvester,[2] the court defined conversion as

" * * * any distinct act of dominion wrongfully asserted over another's personal property."

In addition to a judgment ordering the return of the wrongfully converted property to plaintiff, damages were also awarded for the plaintiff's mental anguish resulting from the wrongful conversion. In instant case, the court finds an award for mental anguish similarly appropriate.

The court in Davis v. American Marine Corporation,[3] defined conversion in the following manner:

"Withholding Possession.

"It is a serious interference with the owner's control of the goods to refuse to surrender possession to him when he is entitled to it. A defendant who has come rightfully into possession in the first instance, as for example by a bailment, becomes a converter when he refuses to deliver on demand. Since there has been no wrongful taking or disposal of the property, demand and refusal are necessary to complete the tort.

"An absolute, unqualified refusal to deliver, which puts the plaintiff to the necessity of force or a lawsuit to recover his own property, is a conversion * * *."

Being liable for a wrongful conversion of the plaintiffs' property, the court finds that each plaintiff is entitled to judgment against defendant, Hunt Tool Company, in the amount of $9,000, plus

1. Louisiana Civil Code, Article 3247.

2. 135 So.2d 91 (La.App.1961).

3. 163 So.2d 163 (La.App.1964).

legal interest from date of judicial demand, and all costs of these proceedings.

The court further finds that there should be judgment in favor of Hunt Tool Company, on its counterclaim against Nolte Griffin, in the amount of $1,727.31, together with legal interest thereon from June 28, 1965, until paid.

Let judgment be entered accordingly.