HARDY, Judge.
This is an action by plaintiff as tutrix of the minor, Bobby Lee Phillips, for the recovery of compensation as for total permanent disability, naming as defendants G. C. McLain, the immediate employer of the minor, Gross & Janes Company and its insurer, Consolidated Underwriters. Upon confirmation of default there was judgment in favor of plaintiff and against McLain, from which no appeal has been taken. As against the other defendants plaintiff’s demands were rejected, from which judgment she prosecutes this appeal.
The facts as to the occurrence of the accident, the nature and extent of the injury and the rate of compensation are undisputed. The only issue which is presented by this appeal bears upon the relationship between Gross & Janes and McLain, the immediate employer of the minor, Bobby Lee Phillips. On behalf of plaintiff it is contended that the relationship was that of principal and contractor under the provisions of LSA-R.S. 23:1061, which establishes the liability of the principal in such cases for payment of compensation to an employee of the contractor. To the contrary defendants urged that the relationship between McLain and Gross & Janes was that of seller and purchaser of timber products.
The facts show that Phillips was in the direct employment of one G. C. McLain, Jr., who was the operator of a sawmill, located in the Flatwoods Community in Ra-pides Parish, engaged in processing hardwood tie timbers which were sold to Gross & Janes. The mill was actually owned by McLain’s father and at the time of the accident was under chattel mortgage, covering mill machinery and equipment, in favor of Gross & Janes. The ties were being manu *252 factured from hardwood timber cut from property in Natchitoches Parish which had been purchased by Gross & Janes Tie Company, represented by E. D. Nicklas, from Roy O. Martin Lumber Company, Inc., for a consideration of $1,100 cash, as evidenced by instrument of conveyance dated March 2, 1956. According to the testimony of Nicklas he negotiated this purchase from Martin in the interest of McLain as the real purchaser, and only as a matter of convenience was Gross & Janes named as the purchaser. Immediately upon conclusion of this negotiation, the amount paid as consideration, being the sum of $1,100, was charged against McLain’s account with Gross & Janes. Both Nicklas and McLain testified that the amount of the purchase price was to be repaid by deductions from the price of tie timbers cut and milled from the property in question and delivered to Gross & Janes.
At the time of the accident the mill was being operated by McLain, Jr. under the terms of a lease agreement with his father. Some months following the occurrence of the accident young McLain purchased the mill from his father for a cash consideration of $400, which amount he obtained from Gross & Janes, and the assumption of the unpaid balance on the chattel mortgage. As a consequence of this transaction Mc-Lain, Jr. gave Gross & Janes a chattel mortgage and note in the principal sum of $1,283.71, which represented the unpaid balance of the note given by his father, plus the $400 cash consideration.
Defendants urge that (1) McLain was the real purchaser of the hardwood timber from the Martin Lumber Company; (2) that McLain had no relationship with defendant, Gross & Janes, except that of vendor of ties cut to its specifications; (3) that Gross & Janes had no supervision over McLain’s operations; (4) that McLain was under no compulsion to sell the ties produced and milled from the. purchased timber exclusively to Gross & Janes, and, finally (5) that Gross & Janes had no connection with the employment of the minor, Phillips, and no liability under the provisions of LSA-R.S. 23:1061.
As opposed to the above contentions, counsel for plaintiff argue that the principal transaction was an outright purchase of timber by Gross & Janes and that Mc-Lain was directly employed as a contractor by Gross & Janes in the cutting and processing of tie timber which constituted a part of the trade and business of Gross & Janes and therefore fixed liability for workman’s compensation within the purview and under the provisions of LSA-R.S. 23:1061.
At the very outset we think it pertinent to observe that we are impressed with the suspicious nature of the factual circumstances involved, which bring into question, as highly suspect, the good faith of the parties defendant with respect to their actual, legal relationship. For this reason we have painstakingly examined the record in the instant case, with the result, that, despite the suspicious nature of the circumstances, we are impelled to the conclusion, based upon the effect of the evidence produced, that plaintiff has failed to establish by a preponderance of competent evidence the claim that the relationship between Gross & Janes and McLain was other than that of vendor and purchaser of cross-ties.
The facts in the instant case are remarkably analogous to those considered by this court in Grant v. Consolidated Underwriters, La.App., 33 So.2d 575 (writs denied), in which we were concerned with the sole question as to the nature of the relationship between Gross & Janes Tie Company and the sawmill operator, one Mc-Allister, who was the direct employer of the plaintiff, Grant. The only substantial distinction as to the factual situation in the two cases rests in the fact that McAllister had purchased the timber by the stick, in his own name, upon the basis of an agreement by the agent of Gross & Janes to pay a fixed amount per tie for all cross-ties cut from the property involved.
*253 In the cited case we developed the modus operandi of the Gross & Janes Tie Company in connection with its business of purchasing manufactured ties. There is nothing in the record before us which would justify the conclusion that Gross & Janes in the instant case was acting in the capacity of a manufacturer of cross-ties through the interposition of McLain as a direct contractor. On the other hand, it is established, as contended by the defendants, that Gross & Janes served only as an intermediary in procuring the sale of the timber from Martin to McLain and, while holding the formal title, the transfer to Mc-Lain for the consideration involved had been contemporaneously effected. It is highly probable that this procedure was adopted because of Martin’s unwillingness to enter into contractual agreements with McLain, who does not appear to have possessed any basis of financial responsibility insofar as is disclosed by the record.
It is noted from the written opinion of our learned brother of the district court that he cited, though he did not exclusively rely upon, the case of Jones v. O. C. Hennessy, Inc., La.App., 85 So.2d 693, decided by our brethren of the First Circuit. Since the rendering of the district judge’s opinion the holding of the First Circuit Court in the Hennessy case has been reversed by the Supreme Court, 232 La. 786, 95 So.2d 312. However, our examination of the Hennessy case discloses such a distinction of factual circumstances from those established in the instant case as to render it valueless in support of any conclusion herein.
We must confess that we have reached the conclusion first above set forth with considerable reluctance, not because we feel insecure in our conviction as to the facts adduced and the law applicable, but rather because of what we regard as an unfortunate end product of our conclusion, which results in an unjust denial of the right of a workman to the benefits which both our statutory legislation and the judicial interpretations of our appellate courts have attempted to secure. Realizing the gratuitous nature of the observation, the author of this opinion, nonetheless, feels impelled to emphasize the injustice which is not peculiar to the case at hand but involves a multitude of similar claims.
The many and widespread ramifications of the lumber and timber industry in our State have given rise to a number of complicated cases involving employer-employee, and principal-contractor relations which effectively control the adjudication of rights under the Workman’s Compensation Statute, as well as responsibility to the general public. The elimination of the atmosphere of vagueness and uncertainty which surrounds this area under presently inadequate statutory provisions could and should be effectively accomplished by the legislative branch of our State government.
The judgment appealed from is affirmed at appellant’s cost.