112 So.2d 135 (1958)
J. W. HATTEN, Plaintiff-Appellee,
v.
OLIN MATHIESON CHEMICAL CORP., Defendant-Appellant.
No. 8879.
Court of Appeal of Louisiana, Second Circuit.
December 19, 1958.
On Rehearing May 27, 1959.
*136 Shotwell & Brown, Monroe, for appellant.
Julius T. Long, Shreveport, for appellee.
AYRES, Judge.
This is an action for workmen's compensation. The defendants are Olin Mathieson Chemical Corporation, hereinafter referred to merely as Olin, and Charley Edwards. Plaintiff was engaged in cutting timber on the lands of the first named defendant and hauling the logs to the mill of the second named defendant to be manufactured into railroad cross ties and subsequently sold to Gross and Janes Tie Company. At the time of the accident, occurring February 12, 1957, plaintiff was engaged in loading a truck with logs; while standing on top of a load the logs "bursted out" and, from the force and tension thereby applied to a binder chain, the chain struck plaintiff's right leg, knocking it out from under him, and broke both tibia and fibia.
No issue is presented, or any serious question raised as to plaintiff's injury nor that he was totally disabled at the time of trial. Therefore, should plaintiff be entitled to compensation, recovery should be for the period of such total disability, subject to the statutory maximum of 400 weeks. Mathis v. Standard Oil Co. of Louisiana, 16 La.App. 169, 133 So. 527; Vilce v. Travelers Insurance Co., La.App., 25 So.2d 256; Colbert v. Smith & Campbell, La.App., 39 So.2d 757; Malone Louisiana Workmen's Compensation, p. 353 et seq., § 280.
Plaintiff's position and contention is that he was either an employee of Olin or of Edwards, or of both, but, if an employee only of Edwards, that the relationship between Olin and Edwards was one of principal and contractor, and in that event the work performed and services rendered by plaintiff were an essential part of the principal's business of owning and operating a pulp and paper mill and of the necessary logging operations in connection therewith.
*137 Defendants' position is that their relationship was not one of employer and employee, or of principal and contractor, but was one of vendor and vendee, pursuant to which Olin merely sold timber to Edwards, who was plaintiff's employer.
The conclusion reached by the trial court was that, in effect, plaintiff was an employee of Olin Mathieson Chemical Corporation. In accordance with the finding thus made, the court awarded plaintiff compensation against Olin as for total and permanent disability for the statutory maximum period of time at the rate of $32.50 per week. From the judgment Olin has appealed, and plaintiff has answered the appeal, praying that the weekly compensation be increased to $35 per week. Plaintiff, however, did not appeal from that portion of the judgment rejecting his demands as against Edwards. The primary question for determination is the matter of the relationship between Olin and Edwards, and as between the former and plaintiff.
The timber cut and removed from Olin's lands was undesirable, low grade hardwood. The program of removal entailed a two-fold purpose, (1) a realization on the investment in the timber, and (2) the removal of the timber in connection with the owner's program of reforestation. That the cutting and hauling of this timber, as was being done by plaintiff at the time he was injured, constituted an important and essential part of the work and program undertaken by Olin in its forestry program and in the reforestation of its lands admits of no serious dispute, nor can it be successfully disputed that this undertaking is a part of the trade, business and occupation of Olin. Neither can it be seriously contended that plaintiff was not rendering services for Olin.
The principal issue presented for resolution is purely factual and is to be determined from all the facts and circumstances in accordance with certain definite statutory rules, as well as rules firmly established in the jurisprudence of this State. For instance, under the facts referred to and as disclosed by the record, there is a presumption of a relationship of employer and employee between Olin and plaintiff.
"A person rendering service for another in any of the trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter." LSA-R.S. 23:1044.
The Workmen's Compensation Statute is humane in its purpose and its scope should be enlarged rather than restricted so as to include all services that can be reasonably said to come within its terms, and to that end its provisions should be liberally construed. Dick v. Gravel Logging Co., Inc., 152 La. 993, 95 So. 99. The statute, with its amendments, was designed to cover all employees who might reasonably be brought under its paternalistic protection. Spanja v. Thibodaux Boiler Works, Inc., La.App., 2 So.2d 668; Thibodaux v. Sun Oil Co., La.App., 40 So. 2d 761; Hebert v. Gates, La.App., 50 So. 2d 859.
The statute likewise speaks with authority when it says:
"No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided." LSR-R.S 23:1033.
Moreover, it is firmly established in the jurisprudence that the findings of a trial court upon issues of fact are entitled to great weight, and that when only issues of fact are involved it is incumbent upon the appellant, in order to secure a reversal of the decision from which he appeals, to show manifest error in the judgment. Thornton v. Ellington, 209 La. 613, 25 So.2d 282; Falgout v. Johnson, 191 La. 823, 186 So. 349; Lejeune v. Lejeune, 187 La. 339, 174 So. 643; Wagner v. Shannon, 180 La. 233, 156 So. 289; Kruse v. Kruse, 175 La. 206, 143 So. 50; Guillory v. Fontenot, 170 La. 345, 127 So. 746; Currie *138 v. Government Employees Ins. Co., La. App., 90 So.2d 482; Commercial Credit Corp. v. Morris, La.App., 107 So.2d 563.
The record establishes these facts. Soon after Olin acquired the pulp and paper mill of the Brown Paper Mill Company, Inc., and its timber lands, in September, 1955, a program was inaugurated to remove low-grade hardwood timber in conjunction with and as a part of its forestry program. Such timber as was merchantable as saw logs was first cut and removed, followed by the cutting and removal of such timber as was suitable for cross ties. One E. D. Nicklas, district supervisor of production of cross ties in that area of North Louisiana for Gross & Janes Tie Company, learning of defendant's program, discussed the matter with its representatives "about starting tie production on their territory ourselves." At that time Charley Edwards, who owned and operated a tie mill near Jena, Louisiana, and whose production had gone to Gross and Janes for many years, had already or was about to "cut out". Following Nicklas' visit and contact with Olin's representatives, Edwards contacted Olin's foresters, who arranged for Edwards to cut tie timber and eventually other lowgrade timber from Olin's lands. Accordingly, Edwards moved his mill to a site convenient to Olin's property near Chester in Winn Parish.
Plaintiff, who had therefore cut similar timber from Olin's property and hauled it to other mill operators, particularly one W. R. Roberts in Jackson Parish, applied to Edwards for similar work but was declined, whereupon he contacted W. D. Prince, a forester of Olin over the area or territory concerned, who told plaintiff he could haul to Edwards' mill timber from an 80-acre tract, which he designated and pointed out. On informing Edwards of the conversation, plaintiff testified Edwards said if Prince told him to do the hauling, it was all right as Prince was the boss. It was during this operation plaintiff sustained accidental injuries for which he here seeks to recover compensation.
In an effort to establish a relationship of vendor and vendee between the defendants, the defendants offered in evidence a series of sales agreements executed by Olin and Edwards covering an aggregate acreage of some 2,000 acres. The first of these agreements recites that the grantor, Olin, had designated certain timber suitable for cross ties on certain described lands and "hereby agrees to sell unto the grantee (Edwards) all of the timber so designated at the following price: $0.30 per tie", followed by a stipulation as to the time within which such timber should be cut and removed, and that as the timber was cut it would be hauled to the grantee's mill and there scaled by the grantee. Payment by the grantee to the grantor was placed on a weekly basis, with the grantee agreeing to pay the severance tax on the timber cut. The grantee obligated himself to hold the grantor free of liability of any kind arising from the grantee's operation under the contract. Later, the agreements were modified by reduction of the price to 20 cents per tie or stick and by the grantee agreeing to provide insurance covering workmen's compensation and public liability.
Other contracts of this series, in addition to ties, provided for the cutting and removal of timber suitable for staves and kindred purposes, a clause in one of which recites: "This sales agreement subject to cancellation with 10 days written notice from grantor to grantee." The nature and language of these instruments is unconvincing in establishing the relationship contended between the parties and for which they were offered in evidence. Their tendency is to establish the contrary. They evidence not only the right to control but the actual control exercised by Olin and its representatives over this operation. To that extent they furnish support to facts and circumstances, as heretofore and as will be hereinafter pointed out, that the relationship between Olin and plaintiff was that of employer and employee.
Edwards never saw the timber that he supposedly purchased. He was not concerned *139 where the timber was obtained other than from Olin's lands. He gave no instructions or directions to plaintiff, or to anyone else, as to the cutting of this timber, such as where to cut, the kind or character of timber to be cut, or its size, or the height of the stump. All this was done by Prince or other of Olin's employees.
While the instruments referred to recited that Olin had designated certain timber to be cut for certain purposes, and the agreement to sell was based thereon, the record establishes that some of the timber was marked for cutting and some unmarked; that other markings were made while the cutting was in progress, and, on other tracts and in other instances, unmarked timber was directed to be cut. In instances the cutters were told to leave certain trees which had been marked, or to cut certain ones that had not been marked, and, as stated, even to clear out other areas. Edwards was not concerned with timber cut and even hauled that was classified as culls. He neither paid for that nor for any timber not cut and which was described in the aforesaid agreements, or even that which may have been cut but failed to reach his mill.
As we view the evidence, Olin had the right to control, and did control, this timber operation. There was no binding obligation on Edwards to pay for any timber other than delivered at his mill. Olin had the right under the purported agreements to terminate or stop the operations at will. The instruments relied upon were ineffective as a definite sale or conveyance.
The right to exercise control or supervision over an operation is a factor to be considered in establishing the relationship of the parties involved. The fact that the employer did not exercise control or supervision is not a true test in determining one cutting pulpwood and delivering it by his truck was or was not an employee. The true test is whether the employer has the right to exercise control and/or supervision over the operations.
Where such right to control or supervision existed over operations in cases of the character of the present one, the relation of employer and employee arises. Collins v. Smith, La.App., 13 So.2d 72. Under similar facts and circumstances a transaction was held not to constitute a relationship of vendor and vendee but one of principal and contractor, and the principal was held liable for compensation for the accidental death of an employee of the contractor. Stevens v. Mitchell, 234 La. 977, 102 So.2d 237. That conclusion was reached under the provisions of the statute (LSA-R.S. 23:1061), which provides where a person undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person for the execution of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation which he would have been liable to pay if the employee had been immediately employed by him.
It is abundantly clear that Olin, in the cutting and removal of the timber so as to realize upon its investment therein and to improve or condition its lands for further and better reforestation, utilized the services of both Edwards and Hatten as laborers just as effectively had they been carried on its pay roll. Its forester, Prince, instructed plaintiff to go to work, where to work, and what to cut and haul. Edwards never saw the timber he was supposedly purchasing, and, with that, was unconcerned except as to the logs placed on his yard. Olin not only had the right of control and supervision but such right was fully exercised in the instant case. The mere fact that Hatten was paid by Edwards' check or that Edwards reaped the benefit derived from the slabs and culls is of no material importance. The latter could only be said to be additional pay received by him. At the most, the amount received from those sources was insignificant *140 and, in a manner, only "crumbs from the table", insufficient to effectuate a change in the relationship of the parties.
The trial court found, and we concur in his conclusions, there was no fraudulent design or perhaps actual purpose or intent on the part of Olin or its employees to circumvent the Workmen's Compensation Statute, but the conclusion is inescapable that the course pursued, if upheld, would "just as effectively deprive plaintiff of compensation as if such had been the actual intent and purpose.
The jurisprudence of this State, however, makes it perfectly clear that in a relationship of vendor and vendee, such as arises in the sale of saw logs, pulpwood or ties, the vendee is not liable for compensation benefits for actual injuries sustained by the employees of the seller. Smith v. Crossett Lumber Co., La.App., 72 So.2d 895; Wysinger v. Godfrey, La.App., 86 So.2d 597. See also the authorities therein cited. Malone's Louisiana Workmen's Compensation Law and Practice, p. 144, § 123.
As observed by Professor Malone, the great bulk of cases in which the defendant claimed immunity because of his status as purchaser has arisen in connection with lumbering transactions. Infrequently the owner of a tract of timber land undertakes to log his own property under a contract to sell the timber to a mill or other lumber concern. It is clear that under such circumstances the owner's employees have no valid claim "against the buyer in the event of injury. There has been no deviation from this rule, where there is a bona fide relationship of vendor and vendee. It may be emphasized, however, where, as the statute provides, one renders service for another in the trades, businesses, or occupations designated as hazardous under the Workmen's Compensation Act, he is presumed to be an employee and the burden to overcome that presumption is placed upon the person from whom compensation is sought. Therefore, it is incumbent upon those who assert a vendor-vendee relationship in opposition to compensation claims to establish the bona fides of such relationship. In this respect, the defendant has not only failed, but the preponderance of the testimony establishes, as hereinabove pointed out, a relationship of employer-employee between Olin and plaintiff.
Lastly for consideration is the rate of compensation. The trial court found that the daily rate of pay of a truck driver in the vicinity or locality where plaintiff was employed was from $10 to $12 per day and used the lesser sum as a basis for his computation. Other truck drivers testified to making from $13 to $15 per day for a full day's work. Plaintiff testified his gross earnings for his own labor, truck and team were approximately $20 a day, and that his truck expense was $3 per day and for his team $2 to $2.50 per day. We find no error in His Honor's determination of plaintiff's daily rate of pay. However, it was erroneous to calculate his compensation upon a five-day week basis. The calculation should have been on the basis of a six-day work week. Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, 404.
"After determining an employee's daily wage, the six day week is to be employed in calculating his weekly wage. If he is injured, he is deprived of this ability to work six days per week, and remuneration is awarded him for this deprivation. This test must be applied regardless of the number of days he works for the particular employer, by whom he is employed at the time of his injury."
See also Troquille v. Lacaze's Estate, 222 La. 611, 63 So.2d 139; Miller v. United States Fidelity & Guaranty Co., La.App., 99 So.2d 511.
On this basis, plaintiff should have been awarded the statutory maximum compensation per week and, in accordance with his prayer in answer to the appeal, the judgment will be so amended.
*141 For the reasons assigned, the judgment appealed is amended by increasing the weekly compensation to $35 per week and, as thus amended, the judgment appealed is affirmed at appellant's cost.
Amended and affirmed.

On Rehearing
HARDY, Judge.
Persuaded by the possibility of error of our judgment on original hearing, by reason of the difficult questions of both fact and law which were presented in this case, we granted a rehearing for the purpose of permitting a re-examination. This effort has left the majority of the court of the same opinion as originally expressed.
Contrary to the urgent contention of learned counsel for defendant, we do not feel that the court has relaxed or liberalized the frequently iterated rule bearing upon the burden of proof. As observed in our original opinion, under the facts which we regarded as being established, the plaintiff in this case, at the time of his accidental injury, was rendering service for the defendant In the course of its trade, business and occupation. As a consequence, there existed the character and nature of relationship between the parties which is expressly established under LSA-R.S. 23:1061, and it was incumbent upon the defendant to establish its affirmative defense as to the existence of a vendor-vendee relationship. Our re-examination of the record has only served to confirm the conclusion that the purported instruments of conveyance, and other facts and circumstances in connection therewith, which are relied upon by defendants, are unconvincing as proof of the contended relationship.
We considered this question in Williams v. Consumers Ice Co., La.App., 68 So.2d 246 (writs denied), and noted the purpose of the statute as intended to prevent the evasion of compensation by an employer engaged in a hazardous trade when the work let by the contract is a part of the regular business of the principal, citing Snyder v. Kolb, 11 La.App. 414, 123 So. 454, and Malone's Louisiana Workman's Compensation Law and Practice, Section 126.
In two recent cases this court has reached conclusions contrary to that in the instant case and rendered judgment rejecting the demands of the employee; Phillips v. Consolidated Underwriters, 108 So.2d 251, and Woodel v. Mansfield Hardwood Lumber Co., 110 So.2d 167. Both of the cited cases are readily distinguishable upon the basis of the facts found by this court. In the Phillips case we found and held that the defendant insured was engaged solely and exclusively in the business of purchasing manufactured cross-ties. In the Woodel case we noted the facts which led us to the conclusion that the plaintiff's real employer had no relationship with the defendant except as purchaser of timber.
We concede that the instant case presents a constantly recurring and most troublesome issue. However, the issue must depend on the facts as established in each individual case. Reverting to the case of Phillips v. Consolidated Underwriters, cited supra, we noted in our opinion the feelings of reluctance which accompanied our decision, because we felt that our conclusion resulted in an injustice to the employee. A recent pertinent comment on this difficult question appears in Volume XIX, Louisiana Law Review, page 342, which comment was authored by Professor Wex S. Malone and reads as follows:
"In view of the fact that a purchaser of timber is not subject to compensation liability to the employees of the seller, there has developed a familiar practice in the lumbering industry of interjecting a middleman between the ultimate buyer and the owner of the standing timber. This person fills the ostensible role of one who purchases from the owner and resells to the ultimate buyer. In practice he frequently is a mere contractor who severs the timber and delivers it to the real buyer.

*142 As such, his employees should be entitled to compensation from the buyer under [LSA-]R.S. 23:1061. But the fact that he can be technically classified as a purchaser for resale has served for many years in the past to immunize his principal from liability. Happily there is increasing evidence that the attitude of our Supreme Court toward this situation is undergoing a substantial change. The latest instance is Stevens v. Mitchell (234 La. 977, 102 So.2d 237) decided during the last term. One Tullos negotiated with Griffin for the purchase of standing trees. The sale was effected through Mitchell, who had an exclusive resale agreement with Tullos. In this case payments to Griffin were actually made by Mitchell (presumably with money furnished by Tullos). Stevens, one of Mitchell's workers, was killed and his widow secured compensation from Tullos under [LSA-JR.S. 23:1061. Despite the defendant's claim that Mitchell was a seller, the court emphasized that he was obliged to deliver the logs to Tullos' mill and that all arrangements had to meet with the approval of Tullos."
For the reasons assigned, our judgment on original hearing is now reinstated,
GLADNEY, J., dissents.
GLADNEY, Judge (dissenting).
In my opinion the decision in this case conflicts with the expressed views of this court in Phillips v. Consolidated Underwriters, 1958, 108 So.2d 251, and Woodel v. Mansfield Hardwood Lumber Company, 1959, 110 So.2d 167, and subjects a bona fide vendor of standing timber to liability for workmen's compensation to employees of the buyer of the timber. The instant case accomplishes this by holding the buyer to be the employee of the vendor even though there is no substantial evidence to show such a relationship.
Olin Mathieson Chemical Corporation has diverse interests including timber lands. Through a written act of sale, bona fide in every respect, admitted by and performed punctiliously by the parties to it, Olin sold standing tie timber to Charlie Edwards, the owner of a small sawmill principally engaged in making ties. The responsibility of cutting, hauling and processing the timber was strictly that of Edwards who paid for the timber at 30 cents per tie, as per the customary way of dealing with such timber. After the timber was severed from the land Olin had no further interest in it or the products thereof. The ties as manufactured at the sawmill were principally, if not entirely, sold by Edwards to Gross and Janes, a large procurer of ties.
The admissions of the parties leave no doubt Hatten was employed by and paid by Edwards. After sale of the timber Olin's forester inspected the cutting of the timber only as necessary to secure the performance of the contract according to its terms in order to accomplish the results contemplated by the parties in making the contract, and its inspection did nothing more than this. See Johnson v. Royal Indemnity Company 5 Cir., 1953, 206 F.2d 561.
This court in Woodel v. Mansfield Hardwood Lumber Company, decided February 2, 1959, after rendition of the original opinion herein, reached a conclusion which can hardly be reconciled with that of the instant case. In another recent opinion of this court, Phillips v. Consolidated Underwriters, 1958, 108 So.2d 251, one McLain operated a small sawmill and made ties which he sold to Gross and Janes. Therein we held McLain was the real purchaser of the timber from the Martin Lumber Company, and was liable for injury to one of his employees. The insurer of Gross and Janes was excused because of a vendor-vendee relationship between McLain and Gross and Janes.
The modus operandi of the parties in Woodel v. Mansfield Hardwood Lumber Company was essentially the same as in the instant case. Therein a truck driver sued *143 the defendant company for workmen's compensation for injuries sustained in an accident while operating a log truck allegedly as an employee of the company. The driver claimed the company employed a third party to cut the timber and that the third party employed the driver to cut and haul the timber from the company's land. We held that under the facts established there was no basis for a conclusion that the third party, Vaco, had any relationship with the defendant company except that of purchaser of timber. Edwards occupies the same third party position as did Vaco in the cited case.
The facts in the Woodel and Phillips cases are strikingly apposite to the modus operandi in the instant case. It is my opinion we have merely added to "the atmosphere of vagueness and uncertainty which surrounds this area under presently inadequate statutory provisions." Phillips v. Consolidated Underwriters, supra, 108 So. 2d at page 253. I respectfully dissent.