163 So.2d 834 (1964)
Anthony Frank CANZONERI
v.
The CONNECTICUT FIRE INSURANCE COMPANY OF HARTFORD, Connecticut.
No. 1426.
Court of Appeal of Louisiana, Fourth Circuit.
May 4, 1964.
Elliot Ross Buckley, New Orleans, for plaintiff-appellee.
Dufour, Levy, Marx & Lucas, Leonard B. Levy and William M. Lucas, Jr., New Orleans, for defendant-appellant.
Before REGAN, SAMUEL and BARNETTE, JJ.
CHRIS T. BARNETTE, Judge pro tem.
The defendant, The Connecticut Fire Insurance Company, has brought this appeal from a judgment awarding plaintiff $1,129.15 for personal injuries sustained by him in an automobile accident. Defendant-appellant was the insurer of a Buick automobile owned by Joseph V. Papania and driven by his minor daughter on December 9, 1961, when it was involved in a collision with an automobile driven by plaintiff.
The plaintiff and Miss Papania were traveling in the same direction on St. Claude Avenue in the City of New Orleans near the intersection of Louisa Street. St. Claude is a wide boulevard with two lanes for moving traffic proceeding toward Canal Street with space enough remaining for parking automobiles along the curbing on the right. The two moving traffic lanes are separated by a white line.
Plaintiff was traveling in the traffic lane nearer the neutral ground. Miss Papania was traveling in the right-hand traffic lane some distance behind plaintiff. Both automobiles were approaching Louisa Street at a reasonable speed and within the lawful limit, which is 35 miles per hour at that point.
As the two automobiles reached the intersection of Louisa Street, the plaintiff observed a friend, Mr. Hansen, waiting at the bus stop; and after a quick exchange of *835 signals, plaintiff started to pull over to the curb across the lane of the oncoming Papania car with the intention of picking up his friend. He alleged and testified that he observed an approaching car in his rearview mirror. He also looked over his right shoulder before attempting to cut across the traffic lane and thought there was sufficient distance between the cars to permit him to negotiate the movement assuming the driver of the oncoming car was driving with caution and keeping proper lookout.
Upon entering the lane to his right, he observed the car to the rear to be approaching rapidly and bearing down upon him, and he attempted to turn back quickly into the inside or left lane of traffic. Before plaintiff got back across the dividing line entirely, the Papania car struck the right rear of his car causing damage and injury to him physically. Since the car driven by plaintiff was not owned by him personally, the property damage claim was disregarded and the personal injury claim was the only one considered by the trial court.
The trial court found the proximate cause of the accident to be the failure of Miss Papania to keep a proper lookout and to have her car under control. This appeal therefore involves the factual issues of negligence and proximate cause.
We have carefully read and considered the testimony of the witnesses as recorded in the transcript and find certain facts which we think amply support the conclusion we have reached. We find that the plaintiff admittedly gave no signal, by hand or lights, to indicate his intention to turn across the lane of the oncoming car of defendant's insured. Plaintiff also testified:
* * * * * *
"A I looked in my rear view mirror and glanced over my shoulder and I seen an automobile about a hundred feet behind me on the right-hand lane, and I thought that I had enough room to get over.
"Q And then what did you do?
"A I proceeded with caution and I attempted to pull over into the right-hand lane to pick up Mr. Hansen.
"Q What happened then?
"A Then I was struck by an automobile when I attempted to pull back over to the neutral ground."
* * * * * *
"Q And as you started to pull over out of the left-hand lane into the right-hand lane, what happened?
"A This automobile was bearing down on me and I attempted to pull back to the left-hand lane closest to the neutral ground, as far as I possibly could go and I was struck.
"Q Did you get back into the left-hand lane?
"A I never left it.
"Q. You never did leave the left-hand lane?
"A No, sir."
* * * * * *
The position of plaintiff's car with reference to the right or left lanes and the dividing line between them is one of the disputed questions of fact. From the above-quoted testimony, it would appear that plaintiff did move across the dividing line, although he also said that he "never did leave the left-hand lane." There would have been no collision if one of them had not moved out of his traffic lane. The preponderance of evidence is that it was the plaintiff who did so. We think the plaintiff's statement as a whole clearly shows that he attempted to cross over, he said "I thought I had room to get over."
This conclusion is further supported by the testimony of Officer John H. Parker, Jr., who made a routine police investigation. He placed the location of debris indicating *836 point of impact over and somewhat to the right of the line separating the two traffic lanes. The testimony of Mr. Hansen on this question was equivocal, but he finally located plaintiff's car over the dividing line by inches, or a foot or two at most.
Miss Judy Jorns, a friend and passenger in the car with Miss Papania, testified:
* * * * * *
"Q Would you tell the Court what happened at the time of the accident and immediately before it?
"A Well, we were riding along and he cut in front of us, and he was going so slow that she couldn't avoid hitting him. That's all I remember. She tried to sound her horn and put on her brakes, but it didn't help because he was going so slow."
* * * * * *
The reference by this witness to the very slow speed of plaintiff is similar in this respect to the testimony of plaintiff's friend, Mr. Hansen, who said:
* * * * * *
"A Well, he started to slow down, oh, I'd say for about maybe a hundred or so feet, and he started to pull out of the lane and then he stopped, started to pull back into the lane and stopped and his car was struck by another automobile."
* * * * * *
We have given considerable weight to the testimony of two apparently disinterested witnesses, Francis Amato, a motorist trailing the Papania car, and Clement T. Froeba, a bystander. We quote from their testimony portions which we think are particularly significant.
Mr. Amato testified:
* * * * * *
"Q Now will you tell the Court what happened?
"A Well, the way I see it the Ford was in the left-hand lane and the Buick was in the right-hand lane. And the Ford was going at a slower rate of speed than the Buick, which gave a part of the Buick coming up on the right-hand lane more than the Ford. And about the time they were let's say next to each otherThe Ford pulled into the right-hand lane and, in my opinion, as though he were pulling into Jansen's Service Station but from the left-hand lane into the right-hand lane."
* * * * * *
Mr. Froeba testified:
* * * * * *
"Q Would you tell the Court exactly what you saw take place?
"A In the flow of traffic going on the side of St. Claude, going towards Canal Street, there was this traffic was flowing in a normal rate of speed. They had a Ford, a white Ford and a, I think, it was a maroon or dark-color Buick. They were traveling toward Canal Street with the Ford.
"As they crossed the intersection of Louisa, approximately ten feet or two car lengths or a car and a half length in front of the Buick, and as he was passing coming across Louisa Street towards Canal Street, there was someone at the bus stop hollered out to someoneI didn't know who at the timebut I assume after it happened that it was the driver of the Ford because he had no sooner crossed the intersection of Louisa and was proceeding further downalmost simultaneously he made a swerve with his head to look and see and at the same time swerved into the right *837 lane and made an attempt to get into the right lane, let's say.
"And this is an assumption of mine that he was going to get to the curb to pick up the person that whistled or yelled from the bus stop. And evidently glancing out of his eye, when he seen this Buick coming along, he made an attempt to get back into the left lane. And in the process it was too late and whenhe more or less criss-crossed with the Buick and was hitlet's seethe right side of the front of the Buick hitting his leftthe left of the Fordrear of the Ford.
"And at the time of the accidentof impact the Ford was straddling the yellow or white line that separates the two lanes moving lanes on St. Claude Street. After the impact the Ford drove into the Jansen's Station, which is approximately a quarter of a block or a third of the block up the street, and the Buick came to a stop right then and there."
* * * * * *
On cross-examination this witness said:

* * * * * *
"A That called my attention to look up. In other words, somebody yelled and just like somebody looks up wondering why. I noticed right immediately after the yell that the Ford driver did gave a double take and then proceeded to go into this lane. And when he noticed he couldn't make it, that's when he tried to come back and, in the meantime, the girl noticed she couldn't stop in time. That's my opinion, that she had made the attempt to go around him."
* * * * * *
We are not unmindful of the well-settled jurisprudence of this state that in the absence of manifest error, the trial judge's findings of fact should be sustained. Orlando v. Polito, 228 La. 846, 84 So.2d 433; Fortenberry v. Scogin, La.App., 149 So.2d 732; Oubre v. Judice, La.App., 147 So.2d 745; Platt v. Scarborough, La.App., 108 So.2d 802; Patton v. Argonaut Underwriters Insurance Co., La.App., 110 So.2d 142; Hatten v. Olin Mathieson Chemical Corp., La.App., 112 So.2d 135.
In the instant case, however, we must disagree with the learned judge of the trial court and, for this reason, have quoted from the testimony at much greater length than otherwise would have been necessary.
It is our opinion that the proximate cause of the accident was plaintiff's negligence in turning out of his lane of traffic across the lane of the oncoming car driven by defendant's insured. This Court held in Emmco Insurance Company v. Fox, La. App., 124 So.2d 770 (1960): "It is a well-settled rule of the road that one must be sure it is safe to turn left or right across the path of another automobile before attempting to do so."
This rule is stated in LSA-R.S. 32:79 in the following language:
"(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."
This principle has been applied in the following cases: Bowman v. Liberty Mutual Insurance Company, La.App., 149 So. 2d 723; Taylor v. Hynes, La.App., 147 So.2d 432; Baumann v. Allstate Insurance Company, La.App., 107 So.2d 805.
On a multiple lane street or highway, a greater burden of responsibility for the exercise of extreme caution is required of a motorist changing from one lane to *838 another than of a motorist proceeding within lawful speed limits in a straight line in a marked lane. This does not, of course, relieve the motorist traveling straight of the duty of care; of keeping a proper lookout; of having his vehicle under control and the duty to avoid all foreseeable danger, but the greater responsibility is imposed upon the one who deviates from his course and moves across parallel traffic lanes.
In the instant case the plaintiff violated this duty and is responsible for the accident caused by his negligence.
For these reasons the judgment of the trial court is reversed and it is now ordered that there be judgment in favor of the defendant, The Connecticut Fire Insurance Company of Hartford, Connecticut, and against the plaintiff, Anthony Frank Canzoneri, rejecting plaintiff's demands and dismissing his suit at his costs in both courts.
Reversed.