691 So.2d 260 (1997)
Ronald DAIGLE, et al.
v.
Genesis MUMPHREY, et al.
No. 96-CA-1891.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1997.
*261 Brian G. Shearman, Lawrence D. Wiedemann, Wiedemann & Wiedemann, New Orleans, for Plaintiffs/Appellants.
David K. Persons, Dee O'Neil Andrews, Metairie, for Defendants/Appellees.
Before BYRNES, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiffs Ronald and Barbara Daigle (hereinafter "the Daigles") appeal a trial court judgment based on a jury verdict finding Ms. Daigle 100 percent negligent for a vehicular accident which caused her injuries. We affirm.

Facts
Ms. Daigle was allegedly injured in a vehicular accident between her van and a Coca-Cola truck driven by defendant Genesis Mumphrey which occurred on a stretch of Interstate 10 near LaPlace, Louisiana, on June 5, 1992. The parties to the case relate two different stories when describing the accident. Ms. Daigle claims that she had successfully made a lane change and was "established" in the left lane when her van was unexpectedly struck from behind by the Coca-Cola truck. Mr. Mumphrey and his passenger, Eddy Sorrells, claim that Ms. Daigle abruptly "cut" from the right lane to the left lane directly in front of the truck, and that she looked as though she was considering a left-turn onto a gravel path across the interstate at that point. Mr. Mumphrey and Mr. Sorrells both stated that Mr. Mumphrey immediately slammed on his brakes, but that he was unable to sufficiently slow the truck to be able to avoid a collision.
The Daigles filed suit against Mr. Mumphrey, the driver of the truck; Louisiana Coca-Cola Bottling Company, Ltd., the driver's employer; and National Union Fire Insurance Company, Coca-Cola's insurer. Following a three-day trial on the merits, a jury found that Ms. Daigle was 100 percent negligent in causing the accident. In accordance with the jury verdict, the trial court entered judgment in favor of the defendants, dismissing the Daigles' suit at their cost. The Daigles' primary argument on appeal is that the jury improperly failed to assign any liability to Mr. Mumphrey for the accident in question. Because we find no error in the jury verdict on that issue, we pretermit consideration of the other issues raised by the Daigles.

Liability of a following motorist
Citing the Louisiana statutes concerning the duty of a following motorist to a preceding motorist, the Daigles claim that the jury failed to properly apply the presumption that the following motorist is liable for a rear-end collision. That presumption is derived from LSA-R.S. 32:81(A), which provides as follows:
The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard *262 for the speed of such vehicle and the traffic upon and the condition of the highway.
The above statute has been cited by Louisiana courts to support a requirement that a following driver maintain a sufficient distance from a preceding vehicle to avoid a collision "under circumstances which should be reasonably anticipated." Hadley v. Doe, 626 So.2d 747, 750 (La.App. 5th Cir.1993). Thus, the law has established a rebuttable presumption that a following motorist who strikes a preceding motorist from the rear has breached the standard of conduct prescribed by LSA-R.S. 32:81(A) and is therefore liable for the accident. LeBlanc v. St. Landry Parish Police Jury, 94-501 (La.App. 3d Cir. 12/7/94), 647 So.2d 614, 617; Lewis v. Variste, 422 So.2d 222, 225 (La.App. 4th Cir. 1982), citing Eubanks v. Brasseal, 310 So.2d 550 (La.1975). That rule is based on the premise that a following motorist whose vehicle rear-ends a preceding motorist either has failed in his responsibility to maintain a sharp lookout or has followed at a distance from the preceding vehicle which is insufficient to allow him to stop safely under normal circumstances. Welch v. Thomas, 263 So.2d 427, 429 (La.App. 1st Cir.), writs denied, 262 La. 1132, 266 So.2d 434, 262 La. 1137, 266 So.2d 436, 262 La. 1143, 266 So.2d 438 (1972).
A following motorist may, however, rebut the presumption of negligence by proving the following things: (1) that he had his vehicle under control, (2) that he closely observed the preceding vehicle, and (3) that he followed at a safe distance under the circumstances. Chambers v. Graybiel, 25,840 (La. App.2d Cir. 6/22/94), 639 So.2d 361, 366, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377. The following motorist may also avoid liability by proving that the driver of the lead vehicle negligently created a hazard which he could not reasonably avoid. LeBlanc, 647 So.2d at 617; Hadley, 626 So.2d at 750. See also State Farm Mutual Automobile Insurance Co. v. Hoerner, 426 So.2d 205, 209 (La.App. 4th Cir.1982), writ denied, 433 So.2d 154 (La.1983). This rule is grounded in the "sudden emergency doctrine." Hadley, 626 So.2d at 750.
In the instant case, Mr. Mumphrey testified that he was travelling in the left lane as he exited the elevated portion of the interstate over the south end of Lake Pontchartrain near the LaPlace exit. As he was travelling along at approximately 55 miles per hour, Ms. Daigle's van "roughly" cut over in front of the Coca-Cola truck. Just prior to this, he had seen Ms. Daigle's brake lights, as though she were about to make a left turn. When the truck hit the van, Mr. Mumphrey said, the van was on an angle because it had not completed the lane change. When the van cut in front, he immediately hit his brakes, but the truck nevertheless skid into the van, Mr. Mumphrey testified.
That testimony was corroborated by Mr. Sorrells, who stated that he had noticed Ms. Daigle's van in the right side mirror as she came up on the side of the Coca-Cola truck, approaching a slower-moving vehicle. When the van was one or two car lengths in front of the truck, it moved into the left lane, he said. By that time the van had slowed down, Mr. Sorrells testified, causing the grill of the truck to strike the back corner of the van at an angle. Mr. Sorrells also stated that the van driver seemed undecided concerning whether she wanted to make a lefthand turn.
Moreover, the testimony of Sergeant Kyle Ory of the St. John Parish Sheriff's Office, who investigated the accident, corroborated Mr. Mumphrey's version of the story. At trial, Ms. Daigle stated that she had checked both her rearview mirror and her side view mirror prior to executing the lane change, and she had not seen the Coca-Cola truck. However, Sergeant Ory stated that Ms. Daigle told him at the scene that she had seen the truck, but thought that she had time to complete the lane change. Moreover, Sergeant Ory indicated that the physical damage at the scene of the accident supported a conclusion that Ms. Daigle pulled over in front of Mr. Mumphrey's truck too abruptly to allow him to avoid a collision. Based on the above evidence, we find no manifest error in the jury's finding that Mr. Mumphrey was not liable for the accident, despite the presumption of negligence against a following motorist in a rear-end collision.

*263 Liability of a motorist engaging in a lane change

One exception to the rule that a following motorist is presumed liable for a rear-end collision arises when the driver of the preceding vehicle "negligently creates a hazard which the following vehicle cannot reasonably avoid." Slocum v. American Casualty Insurance Co., 189 So.2d 299, 301 (La.App. 3d Cir.1966) (citations omitted). LSA-R.S. 32:79(1), relative to driving on roadways laned for traffic, provides in pertinent part, as follows:
A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
Thus, a motorist attempting to make a lane change on a multiple-lane highway is required to determine that the maneuver can be "made safely without endangering normal overtaking or oncoming traffic" before attempting the lane change. Averna v. Industrial Fabrication & Marine Service, Inc., 562 So.2d 1157, 1161 (La.App. 4th Cir.1990). Thus, a motorist changing lanes, like Ms. Daigle in the instant case, is held to a greater burden of care than is a motorist proceeding on a straight line in a marked lane at a lawful rate, like Mr. Mumphrey in the instant case. Id.; Canzoneri v. Connecticut Fire Insurance Co., 163 So.2d 834, 837-38 (La. App. 4th Cir.1964). Moreover, when a motorist has changed lanes just prior to an accident, that motorist bears the burden of proving that he determined that the movement could be made safely prior to attempting the move. Id. See also Jefferson v. Strickland, 242 So.2d 582, 585 (La.App. 1st Cir.1970). Relative to this issue, the court in Anthony v. State Farm Mutual Insurance Co., 227 So.2d 180 (La.App. 2d Cir.1969) stated as follows:
A motorist whose vehicle is struck from the rear by reason of his inopportune change of lanes may not thereby convert the occurrence into a rear-end collision so as to impose the burden upon the other motorist to exculpate himself from negligence. In such cases, plaintiffs have the burden to establish, by a reasonable preponderance of evidence, the facts upon which they rely, that is, in this instance, that a rear-end collision occurred. Otherwise a defendant would bear the burden of establishing his freedom from fault in all cases involving accidents occasioned by a forward motorist's changing of traffic lanes. Such a shift of the burden of proof is neither authorized nor countenanced by statutory enactments or by pronouncements found in the jurisprudence.
Id. at 183, quoted in Jefferson, 242 So.2d at 584.
On the basis of the above legal principles, we find adequate record evidence to support the jury's finding that Ms. Daigle was 100 percent at fault in causing the accident in this case. Although the Daigles would have this court mechanically apply the presumption against a following vehicle to determine that Mr. Mumphrey had to have been liable in causing the accident, they ignore the above-quoted law relative to the burden of care placed on a driver changing lanes on a multiple-lane highway. Ms. Daigle admitted in the instant case that she did not engage her blinker to signal her intended lane change. Moreover, she told the investigating police officer that she had seen the truck prior to the collision, but incorrectly believed that she had time to get over. She changed that story when she testified.
As demonstrated by the following quote, the facts of this case are remarkably similar to those found in Jefferson:
There is an irreconcilable conflict in the testimony of the two drivers. The plaintiff driver testified that he looked in his rear view mirror and not seeing any vehicle in the inside lane, he turned into that lane about one block behind that bus. The defendant driver testified that he was at all times in the inside lane, and, that he was overtaking the bus which had stopped or was going very slowly in the outside lane, the plaintiff vehicle darted out about 60 feet in front of him into his lane and that although he did all that he could to avoid striking the plaintiff's vehicle, he could not avoid doing so. The evidence that the defendant driver was in the inside lane at all times is not disputed. It is not disputed *264 that the plaintiff driver changed traffic lanes just before the collision occurred.
242 So.2d at 585.
The same conclusions may be drawn in the instant case. Moreover, as in Jefferson, the factfinder in the instant case found that the negligence of the plaintiff driver was the sole cause of the accident. As "[n]o rule is more firmly established in our jurisprudence than that, in the absence of manifest error, the trial judge or jury will not be reversed on question of fact dependent upon the credibility of witnesses," Id., we affirm the trial court judgment. All costs of this appeal are assessed to the Daigles.
AFFIRMED.