| CLINTON CROWE | * | NO. 2020-CA-0244 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| STATE FARM MUTUAL | * | |
| AUTOMOBILE INSURANCE | | FOURTH CIRCUIT |
| COMPANY, AMERICAN | * | |
| SERVICE INSURANCE, INC., | | STATE OF LOUISIANA |
| AND COREY AMOS | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-10076, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Tiffany G. Chase**
* * * * * *
(Court composed of Judge Edwin A. Lombard, Judge Rosemary Ledet, Judge
Tiffany G. Chase)

D. Douglas Howard, Jr.
Jonathan C. Pedersen
839 St. Charles Avenue
Suite 306
New Orleans, LA 70130

Shawn C. Reed
Shelby S. Talley
516 North Columbia Street
Covington, LA 70433

     COUNSEL FOR PLAINTIFF/APPELLANT

Matthew A. Mang
Victoria H. Fabre
LOBMAN CARNAHAN
400 Poydras Street
The Texaco Center, Suite 2300
New Orleans, LA 70130

     COUNSEL FOR DEFENDANT/APPELLEE

                      **AFFIRMED**
                      **NOVEMBER 18, 2020**

Clinton Crowe (hereinafter "Mr. Crowe") seeks review of the trial court's December 10, 2020 judgment granting the motion for involuntary dismissal filed by State Farm Mutual Automobile Insurance Company and Corey Amos.[1] After consideration of the record before this Court and the applicable law, we affirm the judgment of the trial court.

### Facts and Procedural History

On March 17, 2017, Mr. Crowe, a passenger in the backseat of a medical transport vehicle, was involved in an automobile accident. The vehicle, driven by Mr. Amos, rear-ended the vehicle in which Mr. Crowe was a passenger. Mr. Amos was traveling on Interstate-10, when traffic began to slow down. He applied his breaks and swerved in an attempt to avoid contact with the medical transport vehicle. However, the front right bumper of Mr. Amos' vehicle struck the left rear bumper of the medical transport vehicle.

On October 18, 2017, Mr. Crowe filed a petition for damages alleging personal injuries as a result of the accident. Specifically, Mr. Crowe maintained that he suffered injuries to his neck and back, and sought damages for past and

---

[1] For ease of discussion we will refer to the parties by name when referencing them individually and as "the defendants" when referencing them in the collective.

1

future mental anguish, physical suffering and past and future loss of enjoyment of life.

The matter proceeded to trial on December 10, 2019. During Mr. Crowe's case-in-chief, testimony was elicited from Master Trooper Daniel Flynn (hereinafter "Trooper Flynn"), Mr. Amos and Mr. Crowe. The deposition testimony of Dr. Donald Dietze (hereinafter "Dr. Dietze"), Mr. Crowe's neurosurgeon, was also a part of the record. At the conclusion of Mr. Crowe's case-in-chief, the defendants orally moved for an involuntary dismissal. The defendants argued that Mr. Crowe failed to satisfy his burden of proof on the issues of causation, damages and liability. Conversely, Mr. Crowe maintained that the medical records and testimony established, by a preponderance of the evidence, that the accident caused his injuries. The trial court granted the motion for involuntary dismissal finding that Mr. Crowe had not satisfied his burden of proof and dismissed his claims with prejudice. This appeal followed.

## Discussion

Mr. Crowe asserts two assignments of error on appeal: (1) the trial court erred in finding that he did not satisfy his burden of proof at trial and (2) the trial court erred in granting the defendants' motion for involuntary dismissal. We will discuss each assignment of error in turn.

## Standard of Review

A trial court's findings of fact are reviewed under a manifest error or clearly wrong standard of review and issues of law are reviewed for a determination of whether the trial court's decision is legally correct. *Duhon v. Briley*, 2012-1137, 2012-1138, pp. 3-4 (La.App. 4 Cir. 5/23/13), 117 So.3d 253, 257-258.

2

Additionally, this Court reviews a motion for involuntary dismissal under a manifest error standard of review. *Ridgeway v. Pierre*, 2006-0521, 2006-0522, p. 4 (La.App. 4 Cir. 1/11/07), 950 So.2d 884, 888 (quoting *Franicevich v. Caillou Island Towing Co., Inc.*, 1997-1887, p. 3 (La.App. 4 Cir. 3/17/99), 732 So.2d 93, 95); *See also Kelly v. Housing Authority of New Orleans*, 2002-0624, p. 6 (La.App. 4 Cir. 8/14/02), 826 So.2d 571, 575 ("A dismissal under [La. C.C.P. art. 1672(B)] should not be reversed absent manifest error.").

## Burden of Proof

Mr. Crowe argues that he satisfied his burden of proof, regarding causation, in light of the presumption that Mr. Amos was at fault for the rear-end collision.[2] He also asserts that the evidence introduced at trial establishes that he suffered new injuries as a result of the March 17, 2017 accident.

Louisiana courts have consistently cited to La. R.S. 32:81 for the proposition that a following motor vehicle is required to maintain a sufficient distance from the preceding vehicle in order to avoid a collision "under circumstances which should be reasonably anticipated." *Daigle v. Mumphrey*, 1996-1891, p. 2 (La.App. 4 Cir. 3/12/97), 691 So.2d 260, 262 (quoting *Hadley v. Doe*, 626 So.2d 747, 750 (La.App. 5th Cir. 1993)). La. R.S. 32:81(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." "Thus, the law has established a *rebuttable* presumption that a following motorist who strikes a preceding motorist from the

---

[2] Conversely, the defendants assert that the rear-end collision was the result of the medical transport van suddenly stopping and Mr. Amos' unsuccessful attempt to avoid contact with the vehicle. "The sudden emergency doctrine excuses a driver's negligent acts when the driver is confronted with an emergency situation that he did not aid in creating." *Wilson v. Transp. Consultants, Inc.*, 2004-0334, 2004-0335, p. 13 (La.App. 4 Cir. 3/2/05), 899 So.2d 590, 601. However, the trial court did not reach the applicability of the sudden emergency doctrine.

rear has breached the standard of conduct prescribed by [La. R.S. 32:81(A)] and is therefore liable for the accident." *Daigle*, 1996-1891, pp. 2-3, 691 So.2d at 262. We note that this rebuttable presumption does not create an axiomatic finding of causation and is distinguishable from whether there was a breach in the standard of care.

The plaintiff, in a personal injury action, has the burden of establishing a causal link between the accident and the resulting injury. *Williams v. Mathieu*, 2013-1373, p. 2 (La.App. 4 Cir. 10/29/14), 155 So.3d 54, 57. The plaintiff must prove causation by a preponderance of the evidence. *Maranto v. Goodyear Tire & Rubber Co.*, 1994-2603, 1994-2615, p. 3 (La. 2/20/95), 650 So.2d 757, 759. "The test for determining the causal relationship between an accident and a subsequent injury is whether the plaintiff proved through medical and lay testimony that it is more probable than not that the subsequent injuries were caused by the accident." *Williams v. Stewart*, 2010-0457, p. 6 (La.App. 4 Cir. 9/22/10), 46 So.3d 266, 272.

"It is well settled that, according to Louisiana law, a defendant 'takes his victim as he finds him and is responsible for all natural and probable consequences' of his negligent conduct." *Gaunt v. Progressive Sec. Ins. Co.*, 2011-1094, pp. 32-33 (La.App. 4 Cir. 6/8/12), 92 So.3d 1250, 1271 (quoting *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La. 1993)). As such, when a plaintiff's preexisting condition is aggravated by a defendant's tortious conduct, the defendant is obligated to compensate the plaintiff for the full aggravation of the preexisting condition. *Id.*, 2011-1094, p. 33, 92 So.3d at 1271. However, the plaintiff is tasked with establishing "a causal link between the tortious conduct and the aggravation of his preexisting medical condition." *Id.*

4

Mr. Crowe testified that he was involved in three other automobile accidents prior to the March 17, 2017 accident. He stated that he was involved in an automobile accident in 1998, which resulted in a neck fracture in four places. The fracture to his cervical spine required spinal cord surgery. He testified that the 1998 accident caused pain in his neck and partial paralysis. He stated that although he improved after the spinal cord surgery, he continuously suffered with chronic neck pain.

Although Mr. Crowe could not recall the exact date, he testified that he broke his collarbone in another automobile accident as a result of striking the dashboard. Mr. Crowe also testified that on April 16, 2012, he was involved in an automobile accident wherein the injury to his neck required placement of a cervical spine collar.

On March 19, 2017, Mr. Crowe presented to the emergency room at Ochsner Northshore Medical Center. He testified that, as a result of the March 17, 2017 accident, he experienced pain in his neck, back and right leg. Mr. Crowe stated that his injuries also included pain in his left arm and a burning sensation in his left hand. Mr. Crowe noted that, prior to the March 17, 2017 accident, he was self-medicating with various prescription medications in order to alleviate the pain in his neck. He also stated that he suffered with back pain prior to the March 17, 2017 accident.

In addition to chiropractic treatment, Mr. Crowe was also treated by neurosurgeon Dr. Dietze, approximately six months after the March 17, 2017 accident, because Mr. Crowe stated he was continuing to suffer with pain in his lower back and left arm. Dr. Dietze testified that Mr. Crowe suffered a new spinal cord injury as a result of the March 17, 2017 accident, in an area of the spine that

5

was different than the area of his previous spinal cord injury. Specifically, Dr. Dietze opined that the new spinal cord injury occurred at the C4-5 level, whereas the previous spinal cord surgery site implied a prior spinal cord injury at the C5-6 level. Dr. Dietze stated that spinal cord surgery was recommended as a result of the spinal cord being reinjured due to the March 17, 2017 accident. He also noted that Mr. Crowe had abnormal spinal cord functions and developed post-traumatic kyphosis. While Mr. Crowe reported a burning sensation in his left hand, Dr. Dietze testified that a burning sensation in the hands is typically associated with a spinal cord injury. Notably, he specified that some of his findings are residual issues from Mr. Crowe's prior spinal cord injury. Dr. Dietze further testified that although Mr. Crowe stated the left side of his body felt worse after the accident, he could not confirm whether that injury was new because he was not provided Mr. Crowe's prior medical records.

"[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993). "While an appellate court must review the trial court's conclusions in light of the entire record, it 'must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently.'" *Williams*, 2013-1373, p. 5, 155 So.3d at 58-59 (quoting *Menard v. Lafayette Ins. Co.*, 2009-1869, p. 15 (La. 3/16/10), 31 So.3d 996, 1007).

The trial court reviewed the evidence submitted by Mr. Crowe and determined that he had not established by a preponderance of the evidence that the accident caused the alleged injuries to his neck and back. Mr. Crowe's testimony revealed significant neck and back issues prior to the March 17, 2017 accident.

6

Although Mr. Crowe treated with a neurosurgeon approximately six months after the March 17, 2017 accident, Dr. Dietze testified that since he was not provided with all of Mr. Crowe's prior medical records, he could not confirm that the pain Mr. Crowe was experiencing on his left side was causally related to the March 17, 2017 accident. Additionally, Dr. Dietze opined that some of his findings were residual medical issues due to Mr. Crowe's prior spinal cord injury. Thus, we find no error in the trial court's determination.

We likewise determine that it was reasonable for the trial court to find that Mr. Crowe had not established that the rear-end collision neither aggravated nor caused his injuries. Prior to the March 17, 2017 accident, Mr. Crowe was involved in three automobile accidents. The impact from the 1998 accident resulted in a fracture to Mr. Crowe's neck in four places, requiring spinal cord surgery. Likewise, another prior accident caused Mr. Crowe to break his collarbone. Although Mr. Crowe suffered with preexisting injuries to his neck and back, he failed to establish that the impact of the March 17, 2017 accident exacerbated or caused further injury. He testified that after the medical transport van was rear-ended, he hit his head on the seat in front of him. After the vehicle stopped, he exited the medical transport van and stood on the side of the road. Mr. Amos and Trooper Flynn both testified that the impact from the accident was insignificant. Additionally, the record reflects that there was minimal damage to both vehicles.

After a review of the record, we find that a reasonable factual basis exists for the trial court's determination that Mr. Crowe did not establish that his injuries were caused nor exacerbated by the March 17, 2017 accident. As such, the trial court's finding will not be disturbed upon review.

**Involuntary Dismissal**

Mr. Crowe asserts that the trial court erred in granting the defendants' oral motion for involuntary dismissal. The intricacies involved in reviewing a motion for involuntary dismissal have been succinctly articulated by this Court:

> The trial court has much discretion in deciding a motion for involuntary dismissal. A motion for involuntary dismissal requires the trial court to evaluate all of the evidence presented by the claimant and render a decision based upon the preponderance of the evidence. The standard for granting an involuntary dismissal in a defendant's favor in a bench trial is lower than the standard for granting a directed verdict in a jury trial, where the trial court is required to consider the evidence in the light most favorable to the plaintiff. In a motion for involuntary dismissal, the trial court is required to evaluate the evidence without applying any special inferences in favor of either party. The trial court should grant the motion for involuntary dismissal and dismiss the matter if the evidence is found to be insufficient to establish the plaintiff's case by a preponderance of the evidence.

*Ragas v. Hingle*, 2013-1577, pp. 4-5 (La.App. 4 Cir. 7/9/14), 146 So.3d 687, 690-91 (internal citations omitted). Thus, an involuntary dismissal granted at the close of plaintiff's evidence will not be reversed absent manifest error and there is no manifest error where a reasonable basis exists for the trial court's finding. *Id.*, 2013-1577, p. 5, 146 So.3d at 691.

In the case *sub judice*, the trial court granted defendants' motion for involuntary dismissal based on finding that Mr. Crowe had not established his claim by a preponderance of the evidence. Considering our finding that a reasonable factual basis exists for the trial court's determination that Mr. Crowe did not satisfy his burden of proof, we find no error in the trial court's granting defendants' motion for an involuntary dismissal.

8

## Conclusion

For the reasons set forth in this opinion, we find a reasonable factual basis exists for the trial court's finding that Mr. Crowe did not satisfy his burden of proof at trial and that the trial court was not manifestly erroneous in granting defendant's motion for involuntary dismissal. Accordingly, we affirm the judgment of the trial court.

**AFFIRMED**